### 8315

### STATE v. SANDERS.

ASSAULT AND BATTERY—RAPE.—When a man approaches a woman at her home under an assumed name with intent to ravish her, asks if her husband is at home, saying he would like to see her in the room a minute, near enough to touch her, but not attempting to put his hands on her, but upon her going into the house and getting a pistol and firing at him, he runs away, a verdict of acquittal should be directed.

*State* v. *Sims,* 3 Strob. 137; *State* v. *Johnson,* 84 S. C. 45, and *Jackson* v. *State,* 94 Ga. 319, *distinguished from this case.*

Before COPES, J., Hampton, Winter term, 1912. Reversed.

Indictment against John Henry Sanders for assault with intent to ravish. Defendant appeals.

*Mr. J. W. Vincent,* for appellant.

*Solicitor R. L. Gunter* and *Mr. W. D. Connor,* contra.

September 17, 1912. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendant appeals from a conviction and sentence under an indictment charging that the defendant on the 30th day of May, 1911, "in and upon one Mrs. A. James in the peace of God and of the said State, then and there being, did make an assault, and her, the said Mrs. A. James, then and there did beat, bruise, wound and ill treat with intent her, the said Mrs. A. James, violently and against her will, then and there feloniously to ravish and carnally know, and other wrongs the said Mrs. A. James then and there did, to the great damage of the said Mrs. A. James against the form of the statute in such case made and provided, and against the peace and dignity of the State." The statute of 1909 under which the indictment was found provides:

Section 1. *"Be it enacted* by the General Assembly of the State of South Carolina, That any person convicted of rape or assault with intent to ravish shall suffer death by hanging, unless the jury shall recommend to the mercy of the Court, in which event the defendant shall be confined at hard labor in the State penitentiary for a term not exceeding forty years or less than five years, at the discretion of the presiding Judge." (26 Stat. 206.)

The question made by the appeal is whether the Circuit Judge should have directed a verdict of acquittal on the ground that there was no evidence of an assault by the defendant on Mrs. James. It seems important to set out the entire evidence bearing on the question. The prosecutrix, Mrs. James, is a white woman living in the town of Brunson. The defendant is a negro. Mrs. James' testimony as to defendant's acts is as follows:

"State the circumstances under which you saw him and what occurred at that time? I was sitting out on my porch at good dark and some one came up and says, 'Good evening, Mrs. James,' and I said 'Good evening.' He said, 'Minnie Fields sent me down here for fifty cents,' and I got it and gave him the money, and after taking the money he

Rep.]                    April Term, 1912.

backed himself out in the shade of the house and propped himself on the ballustrade, and asked me if my husband was at home.    I asked him, 'Who are you?' and he told me his name was Son Best, and he said, 'No, not Son Best, Reverend Best.'    Was there a Reverend Best around there, if you know?    Yes, sir.    I said, 'No, my husband is not here, what do you want with him?'    He said nothing, and he said, 'I want to ask a favor of you,' and I said, 'What is it?' He said, 'Nothing much, but I am kind of afraid to tell you,' and I said, 'I cannot accommodate you unless I know.' He said, 'I would like to see you in the room a minute,' and I said, 'Wait a minute'—I stepped in the hall and got the pistol and fired out at him three times.    Do you know whether you hit him?    No, sir, I don't think I did, very much to my regret.    You said he was in the shadow of the house?    The door was open you know, and the light from the hall shown out in front of the house.    Did you see any one else with him?    No one at all.    When he came up and said something about the money where was he standing? Standing at the gate.    How far from the steps or piazza? I suppose eight or ten yards.    How far?    About as far as from me to him (indicating a man sitting near clerk's desk).    After you gave him the money, where did he go? He came up the steps and I handed him the money.    How near were you sitting to the steps?    He could have put his hand over the ballustrade and touched me if he had tried. How near was he to you?    In two feet.    When he took the money, did he come around there in front of the steps? No, sir, when I handed him the money he backed right in the shade of the steps.    How near was he to you then?    In about two feet of me.    He could have very easily put his hand over the ballustrade—he made no attempt to put his hand on me, though he did not have any good intention."

J. M. Sullivan, the town marshal, who arrested the defendant, testified as to defendant's statements:

"Did you make any threats before he made that statement? No, sir. I assured him that he would not be hurt; we told him we were there to protect him, and he came out and told us his intention was to go there and have intercourse with Mrs. James. He said afterwards that another fellow was with him that same afternoon or night. Did he say who that was? Yes, sir. He said his name was Ham Sanders. We found out afterwards that that was false."

Magistrate Dowling testified as follows on the same subject: "Did he make any statement in your presence? Yes, sir. What was that? He stated to myself and Sullivan together that he and another negro had had some talk that afternoon before the occurrence, and they had agreed together to do what he did—at first he said he made up his mind to go around there, and did go there and told Mrs. James he wanted her to do a favor for him, and she asked him what kind of a favor, and he told us that he told her, to go to bed with him. Did he say what was his intention? His intentions were to go to bed with her."

The evidence of an intent to commit a rape was the approach to Mrs. James under false pretense, the inquiry whether her husband was at home, and the improbability that even the madness of lust could have led the defendant, a negro, to expect to accomplish his purpose without violence. On the issue of intent, however, defendant's counsel very properly conceded that there was evidence for the consideration of the jury.

The demand or solicitation by a man that a woman should submit to sexual intercourse with him, with the intention to enforce his demand by violence, is a heinous moral offense against society. But the General Assembly has not seen fit to make such a demand with such an intent a crime, unless accompanied by an assault. If there be a deficiency in the law in this respect, it calls for the exercise of the legislative, not the judicial, power of the State.

The term assault is a very ancient one in our law and its meaning has been long settled. The holding that the acts of the defendant constituted an assault was not in accord with the common understanding of the meaning of assault, nor with the law as established by the Courts. Not only do the facts fall short of the definition of assault, but we do not think a single case can be found where a Court of last resort has decided that similar evidence would support a verdict of assault with intent to ravish.

The essence of judicial authority on what is necessary to constitute an assault is thus given in 3 Cyc. 1020: "An assault is any attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it coupled with a present ability to carry such intention into effect. * * * Mere preparation to commit a violent injury upon the person of another, unaccompanied by a physical effort to do so, will not constitute an assault; but there must be an attempt or offer, though interrupted— the commencement of an act, which, if not prevented, would produce a battery. * * * The force or violence attempted or offered must be physical, and no words, of themselves, can constitute an assault."

In *State* v. *Davis et al.,* 1 Hill 46, assault is thus defined: "The general rule is, that any attempt to do violence to the person of another, in a rude, angry, or resentful manner, is an assault; and raising a stick or fist, within striking distance, pointing a gun within the distance it will carry, spitting in one's face, and the like, are the instances usually put by way of illustration."

The case of *State* v. *Sims,* 3 Strob. 137, is relied on to sustain this conviction, but it strikingly illustrates the difference between the attempt or offer to do violence to another necessary to constitute an assault, and the absence of such attempt or offer in this case. In that case the defendant and the prosecutor had a violent quarrel in the

morning; later in the day the defendant "turned his horse
across the path before the prosecutor, and then shook his
hickory over his head, in striking distance; he rode his
horse twice very near to the prosecutor; the third time he
rode nearly upon him—the prosecutor said, don't ride upon
me, and thereupon struck the horse with his jacob-staff on
the neck; the horse fell on his haunches; the defendant
jumped down and picked up a *junk,* but dropped it without
attempting to throw." On these facts the following instruc-
tion was sustained: "The jury were told, if the defendant
rode his horse so near to the prosecutor, as to endanger his
person and create a belief in his mind that it was his inten-
tion to ride upon him, it would be an assault; so too, if he
shook his hickory over his head, indicating an intention to
strike, and within striking distance, it would be an assault."

In *State* v. *Johnson,* 84 S. C. 45, 65 S. E. 1023, the con-
viction was for assault and *battery* with intent to ravish.
The proof was that the defendant actually laid his hands on
a young white woman who was a teacher, and the sole ques-
tion decided was whether the circumstances warranted the
inference that the touching of the white woman's person by
the negro was an overt act done in the prosecution of an
intention to commit rape. The case is no authority for the
proposition that a solicitation with an intent to force com-
pliance, but without any demonstration or menace, of any
kind, constitutes an assault.

The case of *Jackson* v. *State,* 91 Ga. 319, 18 S. E. 132,
also relied on to support this conviction, was entirely dif-
ferent in facts. There the defendant, a negro, made the
most violent demonstration and assumed the most threaten-
ing attitude possible for a man to assume towards a woman,
when he went at night into the room of a white girl and got
into the bed with her. Likewise in *State* v. *Shoyer,* 104
Mo. 441, 24 Am. St. Rep. 344, 16 S. W. 286, the defendant
had not only got into the bed of the sleeping woman, but
when detected was in the act of moving upon her to commit

the rape.    In *Gaskins* v. *State,* 105 Ga. 631, 31 S. E. 740, the Court held there was no evidence of assault, although the facts were far stronger against the defendant than they are in this case.    Among other authorities showing that the evidence does not sustain the charge, we cite *Hairston* v. *Commonwealth,* 97 Vt. 754, 32 S. E. 797; *Carter* v. *State,* 44 Tex. Crim. 312, 70 S. W. 791; *Clark* v. *State,* 56 Fla. 46, 47 So. 481.    We are not bound by these decisions, but a perusal of them will show how far outside of established law is the holding that the acts of the defendant in this case in any view constitute an assault with intent to ravish.

If A goes to the house of B with the intention to beat him and on arrival expresses that intention to B, but makes no effort to execute his purpose, but on the contrary runs away when B makes a hostile demonstration, it would not be contended for a moment that A was guilty of an assault.    So in this case, whatever may have been the purpose of the defendant, he made no effort to carry it out, but took to his heels at the prospect of resistance.    To hold that the acts of the accused in this case constituted an assault with intent to ravish would be to give a new meaning to the crime of assault and thus, by judicial legislation, create a new crime— and that, too, when the punishment may be death.    If there be need for such a change in the law it is the concern of the General Assembly.

For these reasons I think the judgment of the Circuit Court should be reversed.

MESSRS. JUSTICES HYDRICK *and* WATTS *concur.*

MR. JUSTICE FRASER, *dissenting.*    This appeal is from a conviction for assault with intent to ravish.    The appeal here is on the ground that there is no evidence of an assault. The facts are undisputed and are as follows: The "prosecutrix" was sitting alone on her piazza after dark, when a man (the appellant) approached the house and upon being asked

his mission said that he had been sent by the washerwoman of the "prosecutrix" to ask for a loan of fifty cents. The man gave the wrong name. By reason of the false statement he was allowed to approach to within two feet of the prosecutrix and near enough to take the money from her. He made no attempt to take hold of her, but approached near enough to do so. The appellant asked her if her husband was at home and being informed that he was not, asked her to go to her room with him, thereby soliciting carnal intercourse. The prosecutrix said, "Wait a minute." She then slipped into the hall, got the pistol and fired out at him three times. The defendant then ran away.

The appellant claims that inasmuch as he had not reached the stage at which he was to lay hands upon her, there was no assault.

There was evidence (introduced without objection) that the prisoner confessed that he went to the house of the prosecutrix with intent to have carnal intercourse with her. The jury saw the appellant. They saw the prosecutrix. It was their province to say whether the appellant had any reasonable expectation that he could obtain the consent of the prosecutrix. If the appellant intended to have intercourse and had no reasonable expectation that he secure her consent, then the jury had the evidence from which they could infer that the appellant was there in pursuance of his purpose to use force, *i. e.,* to commit rape. The intent is not a crime and unless there was an assault there was no crime.

Appellant relies upon the following authority: Bishop on Criminal Law 23, says: "Assault is an unlawful, physical force, partly or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being; as raising a cane to strike him, pointing in a threatening manner a loaded gun at him and the like."

The coming within reach of the prosecutrix with intent to carry out his purpose, together with his words showing

his intent is the unlawful physical force, partly put in motion which created a reasonable apprehension of immediate physical injury and is evidence sufficient to sustain a verdict of guilty.

This case is a very much stronger case than the *State v. Johnson,* 84 S. C. 45. In that case the placing of the hands upon the shoulders of the victim was no part of the final struggle and the intent was only an inference from that fact. Here the intent is not an issue and the appellant had proceeded as far by overt act as the prompt and effective resistance of the prosecutrix allowed.

*Jackson* v. *State,* 18 S. E. Rep. 132: "When a man, under the incitement of lust and with the intention of gratifying it by force, enters the bedroom of a virtuous woman at a late hour in the night and gets upon the bed in which she is sleeping, within reach of her person, for the purpose of ravishing her, he commits an assault upon her, although he may not actually touch her, being prevented from doing so by her outcry and the intervention of an occupant of the adjoining room."

*The State* v. *Shroyer,* 104 No. 441, 24 Am. St. Reps. 344: "It was not necessary, in order to constitute an assault, that actual violence should have been used, to sustain such an indictment" (assault with intent to commit rape), "it is not even necessary that the person of the one upon whom the attempt is intended should be touched. If the intent, with the present means of carrying it into effect existed and preparations therefor have been made the assault is complete."

*The State* v. *Sims,* 3 Strob. 137: "To ride a horse so near one as to endanger his person and create a belief in *his* mind that it was the intention of the rider to ride over him, would be an assault."

"His Honor said to the jury that he did not think the defendant intended to either ride upon the prosecutrix or to strike him, yet he thought if his action and conduct was such

as to create the belief in the mind of the prosecutor, that he intended to ride upon or strike him, he would be guilty of an assault."

This conviction was sustained.

Am. Crim. Law (Wharton), sec. 1155: "When the prisoner decoyed a female child into a building for the purpose of ravishing her, and was there detected while standing within a few feet of her in a state of indecent exposure, it was held, that although there was no evidence of his having actually touched her, he was properly convicted of an assault with intent to ravish."

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY *concurs.*