2358

In the Interest of John DOE, Appellant.[1]

(458 S.E. (2d) 556)

Court of Appeals

---

[1] The minor's name has been changed to protect his identity.

*Chief Atty. Daniel T. Stacey,* of the *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. G. Thomas Chase,* Columbia, and *Sol. Joseph J. Watson,* Greenville, *for respondent.*

Heard April 4, 1995.

Decided June 12, 1995.

CURETON, Judge:

October 1, 1993, the family court adjudicated Appellant,

John Doe, age 10, a delinquent for committing an assault and disturbing a school. The family court ordered John to undergo evaluation at the Reception and Evaluation Center (R & E) prior to final disposition (sentencing). At the R & E Center, John was alleged sexually assaulted by other youths. On January 13, 1994, a disposition hearing was held before the family court and John was committed to the Department of Juvenile Justice (DJJ), but the commitment was suspended and John was place on probation for a period of 18 months contingent on the pursuit of an alternative placement.

## ISSUES

The issues on appeal are whether the family court erred (1) in committing John to R & E for evaluation prior to the final disposition hearing; and (2) in finding that the State proved, beyond a reasonable doubt, John was guilty of assault and disturbing a school.

## I. FACTS

On the morning of May 11, 1993, Amy Daniel, a teacher at an elementary school was overseeing children exiting their school buses and proceeding to the cafeteria for breakfast. Daniel observed John cutting through shrubs to get to the cafeteria and noted he looked very angry as he clutched his book bag. John entered the cafeteria and sat in an unassigned seat. Daniel was then informed that John had taken fifty cents from a student on the bus which John denied when Daniel confronted him. Daniel then asked John to see his book bag and John refused. A student teacher then approached John and said "if you don't give us the book bag we're going to have to take it." John became very upset and began to kick, punch and scream. Afraid for the welfare of the other children, Daniel asked her aide for assistance in restraining John. To restrain John, the aide and Daniel used a crisis intervention technique approved by the school district. Believing John had calmed down, the teachers released him whereupon John punched the aide in the neck and chest. John proceeded to scream and cry interrupting nearby classes. Classes near the cafeteria had to be relocated. John testified that he proceeded to scream as loud as he could for one hour. Daniel was finally able to calm John down and take him to the principal's office.

Daniel turned John over to the school social worker who called the Greenville County Sheriff's Office. Investigator Wilson was dispatched to the school. Wilson testified that when she arrived John was "roaming around the office and picking things up." At one point John picked up a pencil and came toward Wilson as if to stab her. Wilson also testified that John tried to kick and bite her and had to be placed in handcuffs and flexcuffs. John testified that he did not try to kick, bite or stab Wilson at any time during their meeting, but that he was only trying to kill himself.

## II. *AUTHORITY OF COURT TO COMMIT TO R & E CENTER*

John contends that as a juvenile under the age of 12, the family court had no authority to commit him to the R & E Center for evaluation. S.C. Code Ann. § 20-7-2170 (Supp. 1993) in effect at the time of the adjudicatory hearing states.

> A child after his twelfth birthday and before his seventeenth birthday . . . may be committed to the custody of [DJJ], which shall arrange for placement in a suitable corrective environment. Children under the age of twelve years may be committed only to the custody of [DJJ], which shall arrange for placement in a suitable corrective environment *other than institutional confinement* (emphasis ours). No child under the age of seventeen years shall be committed or sentenced to any other penal or correctional institution of this State.

Additionally, John cites S.C. Code Ann. § 20-7-2210 (1976) which provides that "children ten years of age and younger shall not be incarcerated in any jail or detention facility for any reason."

The State contends that the family court acted properly in committing John to the R & E Center because the R & E Center does not constitute institutional confinement under § 20-7-2170 or a jail or detention facility under § 20-7-2210. The State submits that the intention of the Legislature was not to make temporary commitment to the DJJ for evaluation purposes constitute institutional confinement. It argues institutional confinement does not encompass the evaluation process for three reasons. First, evaluation is merely a temporary com-

mitment to enable DJJ to make a recommendation to the court about the best course of action to meet the needs of a particular child, whereas institutional confinement concerns the actions of the court in final sentencing and commitment of the youth. Second, the State contends that John's interpretation is contrary to the requirement of § 20-7-2170 that every child be committed to the R & E Center before final disposition. Third, the State claims John's interpretation is inconsistent with the goal of the Children's Code because to disallow proper evaluation of a delinquent youth under the age of 12 to find out what program best meets the child's needs for rehabilitation violates the letter and the spirit of the law.

The State also relies on S.C. Code Ann. § 20-7-400(A)(1)(b) and (d) (1976) which gives the family court exclusive original jurisdiction "concerning any child living or found within the geographical limits of its jurisdiction whose occupation, behavior, condition, environment or association are such as to injure or endanger his welfare or that of others," or "who is alleged to have violated or attempted to violate any state or local law or municipal ordinance. . . ." Section 20-7-390 (1976) defines a child as a person under seventeen years of age. Therefore, the State contends the family court not only had jurisdiction to hear John's case and commit him to R & E for evaluation prior to sentencing, but was required to do so. Furthermore, the State contends the court has the authority under S.C. Code Ann. § 20-7-1330(d) (Supp. 1993) to have a child "examined or treated by a physician, psychiatrist or psychologist. . . ." when a child is found by the court to come within the provisions of § 20-7-400.

All rules of statutory construction must yield to the principle that courts should endeavor to ascertain the real intention of the Legislature. *Horn v. Davis Electrical Constructors, Inc.*, 307 S.C. 559, 416 S.E. (2d) 634 (1992). When interpreting a statute, legislative intent must prevail if it can be reasonably discovered in the language used, which must be construed in light of the intended purpose of the statute. *Gambrell v. Travelers Ins. Companies*, 280 S.C. 69, 310 S.E. (2d) 814 (1983). Sections which are part of the same statutory law of the State must be construed together. *In the Interest of Keith Lamont G.*, 304 S.C. 456, 405 S.E. (2d) 404 (1991). In construing statutory language, the

statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect, if it can be done by any reasonable construction. *Higgins v. State,* 307 S.C. 446, 415 S.E. (2d) 799 (1992). Statutes pertaining to the same subject matter must be harmonized if at all possible. *The Lite House, Inc. v. J.C. Roy Co., Inc.,* 309 S.C. 50, 419 S.E. (2d) 817 (Ct. App. 1992).

Because the family court can only commit a child pursuant to the Family Court Act, we agree with John that the court acted without jurisdiction. *In re Skinner,* 272 S.C. 135, 137, 249 S.E. (2d) 746, 747, (1978). In *Skinner* our Supreme Court stated that the primary purpose of the juvenile court system is to insulate the minor from criminal prosecution. Hence, when a child is adjudicated a delinquent, "by the family court because of his misconduct, he has not been convicted of a criminal offense and may be punished only as prescribed by the Family Court Act." 272 S.C. at 137, 249 S.E. (2d) at 747.

John's contention he could not be committed to R & E turns on whether or not R & E Center can be categorized as institutional confinement or detention facility. We hold that R & E is both institutional confinement and a detention facility. Contrary to the State's contention that the evaluation at R & E is only temporary confinement and does not offend the mandates of §§ 20-7-2170 and -2210, it is nonetheless confinement and detention. S.C. Code Ann. § 20-7-3230(3) (Supp. 1993) provides for the establishment of "residential and nonresidential reception and evaluation centers." While nonresidential evaluation was available, the family court chose residential evaluation. Under § 20-7-2170, we believe the Legislature intended that all children eligible for commitment to the custody of the DJJ undergo evaluation at an R & E Center prior to final disposition. However, we conclude the Legislature specifically did not want children ten years of age and under to be subjected to residential evaluation at an R & E Center and precluded such in § 20-7-2210. We, therefore, hold the family court erred in committing John to a residential R & E Center.

### III. *DISTURBING A SCHOOL*

The second issue on appeal is whether the State proved John guilty of disturbing a school. S.C. Code Ann. § 16-17-420(1)(a) and (c) (1976) provides that it is

unlawful for any person to "willfully or unnecessarily . . . interfere or to disturb in any way or in any place the students or teachers of any school . . . or to act in an obnoxious manner thereon. . . ."

John contends that his actions constituted nothing more than a temper tantrum. He argues the Legislature clearly did not intend his actions to constitute a violation of § 16-17-420. He complains that the statute was not enacted to subject any child who disrupts a school with loud noises to prosecution.

The State submits that the family court judge correctly concluded John was guilty of the crime of disturbing a school. The State bases its argument on John's own testimony. Evidence was adduced that John began kicking, punching, fighting and pushing a table after a teacher attempted to look in his book bag. John testified to screaming for an hour during which time classes were being held. Several teachers' aides and administrators were required to deal with John. John's violent character led to him being restrained by two teachers. John admitted hitting the teacher's aide and even trying to kill himself. Under these circumstances, John's action were sufficient to sustain an adjudication of delinquency for disturbing a school as contemplated by § 16-17-420. We sustain his adjudication on this charge.

## II. *THE ASSAULT CHARGE*

John further submits that the State has not proven beyond a reasonable doubt he assaulted officer Wilson.[2]

Assault is an unlawful attempt or offer to commit a violent injury upon the person of another, coupled with a present ability to complete the attempt or offer by a battery. *State v. Mims*, 286 S.C. 553, 335 S.C. (2d) 237 (1985); *In re McGee*, 278 S.C. 506, 299 S.E. (2d) 334 (1983); *State v. Sanders*, 92 S.C. 427, 75 S.E. 702 (1912). Assault differs from assault and battery in that there is no touching of the victim in an assault. *Id.* at 431, 75 S.C. at 703. (illustrations of assault include any attempt to do violence in a rude, angry, or resentful manner; raising a stick or fist, within striking distance; pointing a gun within the distance it will carry; spitting in one's face, and the

---

[2] Apparently, the State did not pursue assault charges against John for hitting and kicking the teacher's aide.

like). John argues there is reasonable doubt that he, a ten-year-old male who is four feet nine inches tall and weighs only eighty-seven pounds, could have had the capacity to do harm to Officer Wilson. Therefore, he argues, an essential element of assault, the present ability to complete the act, was not proven beyond a reasonable doubt.

The State contends John was properly adjudicated guilty of assault. In support of this contention, it offers Wilson's testimony that John "picked up a pencil and come at me with it . . . in a manner to stab me." Furthermore, the State argues John had the ability to stab Wilson, no matter how much he weighed.[3] The State also points us to evidence John had to be restrained by two school officials while he threw his so-called temper tantrum, he later had to be restrained again in handcuffs and flexcuffs by Wilson, and he finally had to be further restrained by two more officers despite the fact he had handcuffs and flexcuffs on.

The State distinguishes *In the Interest of Jamal Rashee A.*, 308 S.C. 392, 418 S.E. (2d) 326 (Ct. App. 1992) where the State did not present evidence to permit the trial judge to determine beyond a reasonable doubt that a juvenile had committed the offenses charged. In that case there was questionable eyewitness identification, little corroborating evidence, and strong defense evidence that the juvenile was not the perpetrator. The State argues this case is distinguishable because here the evidence clearly shows John acted with violent, obnoxious, and disruptive behavior over a period of at least an hour.

We, nevertheless, must affirm John's adjudication of delinquency unless it is unsupported by evidence. *See In the Interest of Bruce O*, 311 S.C. 514, 429 S.E. (2d) 858 (Ct. App. 1993) (Court of Appeals applied an any-evidence standard of review to the family court's denial of a motion for directed verdict); S.C. Code Ann. § 20-7-2220 (1976) (appeals shall be in the same manner and pursuant to the same rules, practices, and procedure that govern appeals form the circuit court); *see also* 47 Am. Jur. (2d) *Juvenile Courts, Etc.* § 123 (1995). It is within the exclusive province of the trial judge to determine the credibility of witnesses and the truth or falsity

---

[3] Officer's Wilson's physical features are not described in the record.

of the facts on which a determination depends. *Id.* We hold there is some evidence to support the court's finding that John had the ability to do violence to Officer Wilson and affirm his delinquency adjudication.

## V. *CONCLUSION*

We conclude the trial court erred in committing John to the R & E Center and vacate the order committing him to the R & E Center. However, because John has completed evaluation at the R & E Center, the issue may now be moot.[4] As to the adjudication of assault and disturbing the school, we hold there is sufficient evidence to sustain the trial judge's adjudication of delinquency. We affirm accordingly.

Affirmed in part, vacated in part.

SHAW and CONNOR, JJ., concur.

---

[4] Neither John nor the State argues the mootness issue. We are unable to determine from the record whether there is a reasonable expectation that John will be subjected to the same action again. *See In the Matter of Angela Suzanne C.*, 286 S.C. 186, 332 S.E. (2d) 542 (Ct. App. 1985). Additionally, John does not suggest in his brief what practical relief this court may afford him at this time for his invalid admission to the R & E Center.