**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-6070

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JAMES ERIC JONES,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Florence. Terry L. Wooten, Chief District Judge. (4:06-cr-01238-TLW-1; 4:16-cv-01447-TLW)

Argued: December 13, 2018                           Decided: February 4, 2019

Before NIEMEYER, KING, and WYNN, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Wynn joined.

**ARGUED:** Kimberly Harvey Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant. Robert Frank Daley, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Casey P. Riddle, Assistant Federal Public Defender, William F. Nettles, IV, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Florence, South Carolina, for Appellant. Beth Drake, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

KING, Circuit Judge:

James Eric Jones appeals from a decision in the District of South Carolina denying his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, which was imposed more than ten years ago in 2008. By his motion, Jones sought to be resentenced based on the contention that — in light of recent Supreme Court decisions — he no longer qualifies for the fifteen-year mandatory minimum sentence required by the Armed Career Criminal Act (the "ACCA"). According to Jones, he does not have the three predicate convictions that are required to be properly designated as an "armed career criminal." More specifically, he maintains that his South Carolina felony conviction for assaulting, beating, or wounding a law enforcement officer while resisting arrest (hereinafter, the "ABWO offense") is not a "violent felony" predicate conviction under the ACCA. As explained below, we agree with Jones that the ABWO offense is not an ACCA "violent felony," and we thus vacate and remand.

I.

A.

On April 10, 2007, a jury in South Carolina found Jones guilty of the federal offense of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Leading to his sentencing hearing, the probation officer prepared a presentence report (the "PSR") that recommended to the district court that Jones be designated as an "armed career criminal" under the ACCA. The ACCA mandates that a defendant who contravenes § 922(g)(1) is subject to a minimum sentence of fifteen years

— as opposed to the otherwise applicable ten-year maximum for that offense — if the defendant has three prior "violent felony" or "serious drug offense" convictions. *See* 18 U.S.C. § 924(a)(2), (e)(1).[1]  Although the PSR did not identify the specific offenses on which it relied for the ACCA enhancement, it identified several prior convictions of Jones for South Carolina offenses, including those for attempted burglary, second-degree burglary, and strong arm robbery.  In addition, the PSR relied on an ABWO offense, which violates South Carolina Code section 16-9-320(B) (hereinafter, the "ABWO statute"), plus two convictions for assault and battery of a high and aggravated nature ("ABHAN").

At the sentencing hearing conducted on March 20, 2008, the district court ruled — consistent with the PSR — that Jones was an armed career criminal because he had at least three prior "violent felony" convictions.  Pursuant to the ACCA, a "violent felony" is any crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "force clause"]; or

> (ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated crimes clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"].

---

[1] Section 924(a)(2) of Title 18 provides that a defendant convicted of violating § 922(g)(1) shall be imprisoned not more than ten years.  If the defendant has three ACCA predicate convictions, however, § 924(e)(1) of Title 18 requires that he be imprisoned not less than fifteen years.  A defendant who satisfies the criteria for an ACCA mandatory minimum enhancement is an "armed career criminal."

*See* 18 U.S.C. § 924(e)(2)(B). The ACCA thus contains three distinct clauses (i.e., the force clause, the enumerated crimes clause, and the residual clause) that define a "violent felony."

Relying on the ACCA's force and enumerated crimes clauses, the district court determined that Jones's prior convictions for attempted burglary, second-degree burglary, and strong arm robbery were ACCA "violent felon[ies]," and were thus ACCA predicate offenses. Although the Government argued that Jones's other convictions — the ABWO offense and the ABHAN offenses — also constituted ACCA predicates, the court did not address that proposition. Because of his armed career criminal designation, Jones was subject to a mandatory minimum sentence of fifteen years. The court sentenced him to 456 months in prison.[2]

Jones appealed his conviction and sentence to this Court, and his counsel filed what we call an "*Anders* brief," advising us that he could not identify any reversible error, but questioning whether the sentencing court had correctly designated Jones to be an armed career criminal.[3] Relying on Jones's convictions for second-degree burglary,

---

[2] At the sentencing hearing for Jones on March 20, 2008, the district court pronounced a 520-month sentence. Five days later, however, the court sua sponte reconvened and imposed a sentence of 456 months. Absent his armed career criminal designation, Jones's maximum potential punishment would have been 120 months.

[3] An "*Anders* brief" takes its name from the Supreme Court's decision in *Anders v. California*, 386 U.S. 738 (1967). Pursuant thereto, a lawyer who concludes that an appeal on behalf of his criminal defendant client would be "wholly frivolous" should advise the appellate court as such and request permission to withdraw from representation, but not before filing "a brief referring to anything in the record that might arguably support the appeal." *See id.* at 744.

strong arm robbery, and the ABHAN offenses, we ruled that Jones had been correctly classified as an armed career criminal and affirmed. *See United States v. Jones*, 312 F. App'x 559, 560 (4th Cir. 2009). Jones unsuccessfully petitioned for certiorari in the Supreme Court of the United States. *See Jones v. United States*, 557 U.S. 927 (2009). He thereafter also sought collateral relief by way of a 28 U.S.C. § 2255 motion, which the district court denied. In 2011, we affirmed the court's denial of § 2255 relief. *See United States v. Jones*, 419 F. App'x 365, 365 (4th Cir. 2011).

B.

Five years later, in April 2016, Jones moved us for authorization to file a successive motion under 28 U.S.C. § 2255, predicated on the Supreme Court's 2015 decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (hereinafter, "*Johnson II*").[4] *See* 28 U.S.C. §§ 2244(b)(3); 2255(h) (specifying procedures and standards for filing successive § 2255 motions). The *Johnson II* decision had invalidated as unconstitutionally vague the residual clause of the ACCA's "violent felony" definition, as codified in § 924(e)(2)(B)(ii). That decision, however, left intact the ACCA's other two clauses defining a "violent felony," i.e., the force clause and enumerated crimes clause. *See* 135 S. Ct. at 2563. Soon thereafter, in *Welch v. United States*, the Court ruled that *Johnson II* applies retroactively to cases on collateral review. *See* 136 S. Ct. 1257, 1268

---

[4] We identify the Supreme Court's 2015 *Johnson v. United States* decision as "*Johnson II*." We do so because the Court had rendered an earlier decision in 2010 also called *Johnson v. United States*, 559 U.S. 133 (2010) (hereinafter, "*Johnson I*"), where it likewise addressed the ACCA.

5

(2016). As a result of the Court's rulings in *Johnson II* and *Welch*, we authorized Jones to file a successive § 2255 motion in the district court.

By way of his § 2255 motion, Jones contended that he no longer qualified for an ACCA-enhanced sentence and that he was entitled to be resentenced to no more than ten years. The Government disagreed, however, and moved for summary judgment. It asserted — even after *Johnson II* — that Jones yet had at least three predicate "violent felony" convictions. In particular, the Government argued that Jones had been twice convicted of strong arm robbery in South Carolina and once convicted of the ABWO offense. Significantly, the Government no longer argued that Jones's convictions for attempted burglary, second-degree burglary, and the ABHAN offenses were ACCA predicate convictions, apparently because of intervening decisions from the Supreme Court and this Court interpreting the ACCA's definition of a "violent felony."

On January 11, 2018, the district court granted summary judgment to the Government and denied Jones's § 2255 motion. *See United States v. Jones*, No. 4:06-cr-01238 (D.S.C. Jan. 11, 2018), ECF No. 204. In so ruling, the court relied on our 2016 decision in *United States v. Doctor*, where we concluded — notwithstanding *Johnson II* — that South Carolina's strong arm robbery offense is a "violent felony" under the ACCA's force clause. *See* 842 F.3d 306, 312 (4th Cir. 2016). The summary judgment decision thus ruled that Jones still had at least two ACCA predicate convictions. The court then also concluded that other convictions earlier used to declare Jones an armed career criminal — attempted burglary, second-degree burglary, and the ABHAN offenses — no longer qualify as ACCA predicate offenses. Consequently, the court recognized

6

that Jones's armed career criminal designation depended solely on whether his ABWO offense constitutes an ACCA "violent felony." The court then ruled that the ABWO offense is a "violent felony" under the force clause of the ACCA, that Jones had thus been properly sentenced as an armed career criminal, and that he was not entitled to § 2255 relief.

The district court nevertheless saw fit to issue Jones a certificate of appealability. *See* 28 U.S.C. § 2253(c) (providing that a court of appeals can only review the final order in a § 2255 proceeding if a circuit justice or judge issues a certificate of appealability based on "a substantial showing of the denial of a constitutional right"). Jones has timely appealed from the denial of his § 2255 motion, and we possess jurisdiction pursuant to 28 U.S.C. §§ 1291 (providing for appellate review of final decision of district court); 2253(a), (c) (providing for appellate review of final order in § 2255 proceeding after issuance of certificate of appealability); and 2255(d) (providing for appellate review of order entered on § 2255 motion).[5]

## II.

We review de novo a district court's legal conclusions concerning a denial of § 2255 relief. *See United States v. Carthorne*, 878 F.3d 458, 464 (4th Cir. 2017). Our

---

[5] If Jones prevails in this appeal — as the parties agree — he will have served more than the ten-year maximum permissible sentence for his firearm offense. After oral argument in early December 2018, we therefore granted his release on bond pending resolution of the appeal.

7

plenary review of such a denial encompasses the question of whether a prior conviction qualifies as a "violent felony" under the ACCA. *See United States v. Smith*, 882 F.3d 460, 462 (4th Cir. 2018). A prisoner is entitled to § 2255 relief if he can "show that his sentence is unlawful." *See United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *see also* 28 U.S.C. § 2255(b) (recognizing that movant is entitled to § 2255 relief if his sentence "was not authorized by law"). As pertinent here, "[a] sentence is unlawful within the meaning of § 2255 when it was enhanced under the ACCA based on three ACCA predicate convictions and one or more of those predicates [becomes] invalid." *See Hodge*, 902 F.3d at 426. Put succinctly, an ACCA-enhanced sentence is illegal if a retroactive change in the applicable law leaves the enhancement unsupported by the necessary three predicate convictions. *See United States v. Newbold*, 791 F.3d 455, 460 (4th Cir. 2015) (explaining that "there are serious, constitutional, separation-of-powers concerns that attach to sentences above the statutory maximum penalty authorized by Congress" (internal quotation marks omitted)).

III.

On appeal, Jones contends that the district court erred in ruling that the ABWO offense is a "violent felony" under the ACCA's force clause. Jones maintains that the ABWO offense is not a "violent felony" under the applicable categorical approach because it does not have, as an element, the use, attempted use, or threatened use of physical force. More specifically, Jones argues that the Supreme Court has ruled that the ACCA's force clause applies only to those felony offenses that categorically involve

8

violent physical force, *see Johnson I*, 559 U.S. 133, 140 (2010), and that the ABWO offense can be committed without the use, attempted use, or threatened use of such force.[6]

The Government agrees with Jones that the categorical approach applies in these proceedings. It nevertheless argues, however, that the district court did not err in ruling that the ABWO offense is a "violent felony." The Government contends that the ABWO offense fits squarely within the ACCA's force clause because, in order to commit that offense, a person must use or threaten to use violent physical force against another. Consequently, our resolution of this appeal turns on whether a conviction for the ABWO offense requires the use, attempted use, or threatened use of violent physical force.[7] Before resolving that question, however, we will first explain how the categorical approach applies to the ABWO offense.

A.

We begin our analysis with the parties' agreement that the categorical approach applies to our assessment of the ABWO statute. As a general proposition, we are obliged to use the categorical approach when deciding whether a state offense constitutes a

---

[6] Jones also contends on appeal that our decision in *United States v. Doctor*, 842 F.3d 306 (4th Cir. 2016), was erroneously decided. That is, he asserts that the offense of strong arm robbery in South Carolina does not qualify as a "violent felony," and that *Doctor* is wrong. As he acknowledges, however, "one panel of this Court is not entitled to overrule another panel." *See United States v. Said*, 798 F.3d 182, 193 (4th Cir. 2015).

[7] Neither party contends on appeal that the enumerated crimes clause is pertinent to our analysis of whether the ABWO offense is a "violent felony."

"violent felony." *See United States v. Townsend*, 886 F.3d 441, 444 (4th Cir. 2018).  We will not apply the categorical approach, however, when the relevant state statute is "divisible," that is, if the statute lists "elements in the alternative and thereby define[s] multiple crimes."  *See United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (alteration and internal quotation marks omitted); *see also Descamps v. United States*, 570 U.S. 254, 258 (2013) (explaining that categorical approach must be used unless statute at issue is divisible).

The ABWO statute provides, in pertinent part, that it is a felony punishable by ten years in prison for any person

> to knowingly and wilfully assault, beat, or wound a law enforcement officer engaged in serving, executing, or attempting to serve or execute a legal writ or process or to assault, beat, or wound an officer when the person is resisting an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not.

*See* S.C. Code Ann. § 16-9-320(B).  Put succinctly, we agree that the categorical approach applies to the ABWO offense and that the ABWO statute is indivisible. Although that statute identifies three types of offending physical actions (that is, assaulting, beating, or wounding), those actions are simply different ways of satisfying a single element of the ABWO offense.  *See Mathis v. United States*, 136 S. Ct. 2243, 2256-57 (2016) (explaining difference between elements of offense and means of commission).  In other words, the ABWO statute contains a single physical action element and that element can be satisfied by proof of any one of the three specified means of commission.

10

At least two other sound reasons support our determination concerning the applicability of the categorical approach. First, there is no authority from the South Carolina courts requiring that a jury agree on the way the defendant's physical action contravened the statute. *See Mathis*, 136 S. Ct. at 2256 (observing that, where jury need not make unanimous finding as to any item contained in statutory list, the listed items are each single means of committing offense). To the contrary, the only South Carolina appellate decision we have identified that discusses jury instructions for the ABWO offense recounts that the trial court had instructed the jury that it only had to find that the defendant had assaulted, beaten, or wounded the police officer. *See State v. Williams*, 624 S.E.2d 443, 446 (S.C. Ct. App. 2005). Second, the ABWO statute does not provide for any alternative punishments that depend on whether the defendant had either assaulted, beaten, or wounded the officer. *See Mathis*, 136 S. Ct. at 2256 (explaining that court can look to whether "statutory alternatives carry different punishments"). We are therefore satisfied to apply the categorical approach to the ABWO offense.[8]

---

[8] Even if those two features of the ABWO offense — a single physical action element and the same punishment for each physical action — failed to satisfy the inquiry of whether the categorical approach applies to the ABWO statute, we could reach that conclusion for yet another sound reason. Specifically, taking a "peek" at the state court indictment for the ABWO offense in Jones's prosecution, it tracks the statutory language and charges him with assaulting, beating, or wounding an officer. *See Mathis*, 136 S. Ct. at 2257 (recognizing that, where case law or other sources do not "clearly answer" whether a statute is divisible, a court can look to certain pertinent state court documents — such as an indictment — to determine whether to apply the categorical approach). As the Supreme Court has explained, when a charging document "reiterat[es] all the terms of [the state] law," that is "an indication . . . that each alternative is only a possible means of commission." *See id.*

11

B.

1.

With application of the categorical approach being resolved, we turn to how that approach applies in this appeal. We have recognized that the categorical approach "focuses on the elements, rather than the facts, of the prior offense." *See United States v. Shell*, 789 F.3d 335, 338 (4th Cir. 2015) (alteration and internal quotation marks omitted). When we use the categorical approach to resolve whether a state offense qualifies as a "violent felony" under the ACCA's force clause, "we examine whether [that offense] has as an element the use, attempted use, or threatened use of physical force against the person of another." *See United States v. Burns-Johnson*, 864 F.3d 313, 316 (4th Cir. 2017); *see also* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" in ACCA's force clause as offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). In making that analysis, we utilize the Supreme Court's understanding of the phrase "physical force," as used in the ACCA, which the Court interprets as "*violent* force — that is, force capable of causing physical pain or injury to another person." *See Johnson I*, 559 U.S. at 140.

To decide whether a particular state offense includes the use, attempted use, or threatened use of violent physical force, we are entitled to turn to the relevant state court decisions to discern "the minimum conduct required to sustain a conviction for [that offense]." *See Doctor*, 842 F.3d at 308 (internal quotation marks omitted); *see also United States v. Middleton*, 883 F.3d 485, 488 (4th Cir. 2018) (explaining that the categorical approach "requires courts to review the most innocent conduct that the law

12

criminalizes" (internal quotation marks omitted)). Such minimum conduct includes any conduct that there is a "realistic probability" the state would punish under its criminal statute. *See Doctor*, 842 F.3d at 308. If there is a realistic probability that the state would apply the statute to conduct that does not involve the use, attempted use, or threatened use of violent physical force against another, then the offense is not categorically a "violent felony" under the ACCA's force clause, and it is thus not an ACCA predicate under that clause. *See Middleton*, 883 F.3d at 488 ("If the offense sweeps more broadly than the ACCA's definition of a violent felony, the offense does not qualify as an ACCA predicate." (internal quotation marks omitted)).

2.

With the foregoing principles in mind, we will examine the minimum conduct to which South Carolina might reasonably apply the ABWO statute. Of the three physical actions specified in the ABWO statute, an "assault" would be the least likely to involve violent physical force. We will thus focus our minimum conduct analysis on the meaning of an "assault" under South Carolina law.

The Supreme Court of South Carolina has defined an "assault" in various but similar ways.[9] For example, an assault is an "attempted battery or an unlawful attempt or offer to commit a violent injury upon another person, coupled with the present ability to

---

[9] Because the ABWO statute does not define an "assault," we must look to decisions of the South Carolina appellate courts describing that term. *See United States v. Carthorne*, 726 F.3d 503, 512 (4th Cir. 2013) (analyzing Virginia common law definition of assault where Virginia statute criminalizing assault against officer failed to define assault).

13

complete the attempt or offer by a battery." *See State v. Sutton*, 532 S.E.2d 283, 285-86 (S.C. 2000) (internal quotation marks omitted); *see also State v. Sanders*, 75 S.E. 702, 703 (S.C. 1912) (describing assault as attempt or offer to commit battery).[10] In other decisions, the state supreme court has described an assault as "intentionally creat[ing] a reasonable apprehension of bodily harm" in another person by words and conduct. *See, e.g., In re McGee*, 299 S.E.2d 334, 334 (S.C. 1983). Along with those descriptions, the court has identified certain actions that might constitute an assault, including raising a fist "within striking distance [of another], pointing a gun [at another] within the distance it will carry, [or] spitting in [another's] face." *See Sanders*, 75 S.E. at 703 (quoting *State v. Davis*, 19 S.C.L. (1 Hill) 46 (1833)).

In addition to recognizing and describing an assault as a stand-alone common law offense, the Supreme Court of South Carolina has construed the term "assault" in the context of common law assault and battery. In one situation, the court explained that an assault and battery is "any touching of the person of an individual in a rude or angry manner, without justification." *See State v Mims*, 335 S.E.2d 237, 237 (S.C. 1985). The court therein recognized that an assault differs from an assault and battery only "in that there is no touching of the victim." *See id.*[11] Under *Mims*, an assault occurs when a

---

[10] In *State v. Jackson*, a decision preceding *State v. Sutton* and *State v. Sanders*, the Supreme Court of South Carolina defined an "assault," similarly to those decisions, as "an offer or attempt to do violence to the person of another, in a rude, angry, or resentful manner." *See* 10 S.E. 769, 771 (S.C. 1890).

[11] Consistent with the state supreme court's *Mims* decision, the Court of Appeals of South Carolina has recognized that "[a]ssault differs from assault and battery in that (Continued)

14

person attempts to touch another "in a rude or angry manner, without justification." *See id.*; *see also Sutton*, 532 S.E.2d at 285-86 (recognizing attempted battery type of assault). In *Mims*, however, the court also explained that it had previously defined an "assault" as an attempt or offer to commit a violent injury, not just a rude or angry touching. *See* 335 S.E.2d at 237.

3.

a.

Notwithstanding the existence of some tension between the definitions of an "assault" provided by the South Carolina courts, we are satisfied that an assault under South Carolina law can be committed without the use, attempted use, or threatened use of violent physical force. More specifically, pursuant to both *Sutton* and *Mims*, a person can perpetrate an assault by attempting to touch another in a rude or angry manner. *See State v. LaCoste*, 553 S.E.2d 464, 471 (S.C. Ct. App. 2001) (discussing *Mims*'s definition of assault and battery in describing assault). Our determination today is consistent with the South Carolina high court's recognition that spitting at another's face — which can be accomplished in a rude or angry manner but without violent physical force — constitutes an assault. *See Sanders*, 75 S.E. at 703.

With the breadth of South Carolina's assault principles so understood, we must resolve whether there is a realistic probability that the state would in fact apply the

---

there is no touching of the victim in an assault." *See, e.g.*, *State v. Murphy*, 471 S.E.2d 739, 741 (S.C. Ct. App. 1996); *In re Doe*, 458 S.E.2d 556, 560 (S.C. Ct. App. 1995).

15

ABWO offense to an assault involving only an attempt to touch an officer in a rude or angry manner while resisting arrest, such as spitting at the officer. Because South Carolina courts have actually applied the ABWO statute in such a situation, we are convinced that the realistic probability test has been satisfied. Specifically, in *State v. Burton*, a jury convicted the defendant of violating the ABWO statute by spitting blood on an officer's boot. *See* 562 S.E.2d 668, 670 (S.C. Ct. App. 2002). After the intermediate court of appeals vacated the defendant's conviction because of a Fourth Amendment violation, *see id.* at 674, the state supreme court reinstated Burton's conviction, *see State v. Burton*, 589 S.E.2d 6, 9 (S.C. 2003). Although neither court directly addressed the issue of whether the defendant had been properly charged and convicted under the ABWO statute, we are satisfied that Burton's conviction by jury for the ABWO offense, plus the Supreme Court of South Carolina's reinstatement of that conviction, satisfies the reasonable probability inquiry. Because South Carolina applies the ABWO statute to conduct that does not involve the use, attempted use, or threatened use of violent physical force against another, the ABWO offense is not categorically a "violent felony" under the ACCA's force clause.[12]

Our conclusion is informed by, and faithful to, our 2013 decision concerning the South Carolina ABHAN offense in *United States v. Hemingway*, 734 F.3d 323 (4th Cir.

---

[12] In support of its position on appeal, the Government points to several South Carolina decisions wherein defendants were convicted under the ABWO statute for conduct that undoubtedly involves violent physical force. Its minimal conduct discussion, however, does not confront the *Burton* case.

16

2013).  We concluded therein that ABHAN, and its lesser included offense of South Carolina common law assault of a high and aggravated nature ("AHAN"), are not "violent felon[ies]" under the ACCA's force clause.  *See id.* at 335, 338 n.14.  Regarding the ABHAN offense, we ruled that it is not a "violent felony" because it "can be committed even if no real force was used against the victim."  *See id.* at 335 (internal quotation marks omitted).  With respect to AHAN, we explained that the offense has the same elements as ABHAN except for a "completed act of violence."  *See id.* at 338 n.14.  Because AHAN is a lesser included offense of ABHAN, we concluded that our ruling on the ABHAN offense led "inescapably to the conclusion that AHAN is also not categorically an ACCA violent felony."  *See id.*

*Hemingway* thus provides strong support for our determination today that an assault under South Carolina law can be committed without the use, attempted use, or threatened use of violent physical force.[13]  Indeed, it would be logically inconsistent with *Hemingway* for us to now decide that an assault in South Carolina necessarily requires the use, attempted use, or threatened use of such violent physical force, when we have already ruled that a South Carolina assault and battery does not.  We are therefore satisfied that the ABWO offense is not an ACCA "violent felony" and that the district court erred in ruling otherwise.

---

[13] Our conclusion today that an assault in South Carolina can be committed without employing violent physical force is also consistent with our recent unpublished decision in *United States v. Dinkins*, 714 F. App'x 240 (4th Cir. 2017).  There, we explained that, under South Carolina law, "neither assault nor battery involve the type of violent, physical injury required by the ACCA force clause."  *See id.* at 242.

17

b.

The Government resists our ruling today for several reasons, but none are convincing. It contends, for example, that an "assault" within the ABWO statute has an "elevated" meaning because it is included in a list with "beat" and "wound." *See* Br. of Appellee 15. The Government fails, however, to identify any South Carolina precedent supporting that proposition. And if the South Carolina legislature intended for an "assault" to carry a unique meaning within the context of the ABWO statute, it knew how to specify that meaning. *See* S.C. Code Ann. § 16-3-600 (prohibiting several different forms of assault and battery and defining their elements).[14]

The Government emphasizes that its position on appeal is supported by a 2009 opinion letter of the South Carolina Attorney General. The Attorney General therein offers his views on actions that contravene the ABWO statute, and he contrasts subsection (B) thereof with subsection (A), which concerns a misdemeanor resisting

---

[14] The Government also argues that our decision to assign "assault" its ordinary meaning under South Carolina law leads to an absurd result. More specifically, it asserts that, under our reading of the ABWO statute, a person who attempts and fails to touch an officer in a rude or angry manner will have contravened the statute; in contrast, a person who succeeds in his attempt to touch the officer in a rude or angry manner will not have violated the statute, unless that touch constitutes a beating or wounds the officer. The Government's position, however, overlooks the proposition that a battery has been defined as a completed assault. *See United States v. Hampton*, 628 F.3d 654, 660 (4th Cir. 2010); *State v. Chase*, No. 2011-UP-210, 2011 WL 11734321, at *8 (S.C. Ct. App. May 11, 2011). Accordingly, in the Government's hypothetical, both persons could be charged under the ABWO statute because they both committed an assault. Additionally, the Government overlooks that, in the *Burton* case, the defendant was convicted of violating the ABWO statute even though he completed his attempt to touch the officer in a rude or angry manner, that is, by spitting blood on the officer. *See* 589 S.E.2d at 8; 562 S.E.2d at 670.

18

arrest offense and does not use the phrase "assault, beat, or wound." *See* Letter from Att'y Gen. to Investigator/General Counsel to Pickens Cty. Sheriff's Office (Jan. 22, 2009), *available at* 2009 WL 276750.

Although the Attorney General's opinion arguably supports the Government's contention that the ABWO statute satisfies the force clause, it is only one view as to how the statute should be applied. Under South Carolina law, the Attorney General's opinions are not binding on the courts. *See State v. Ramsey*, 762 S.E.2d 15, 18 (S.C. 2014); *S.C. Pub. Interest Found. v. Greenville Cty.*, 737 S.E.2d 502, 505 n.3 (S.C. Ct. App. 2013). Insofar as the Attorney General's view could constitute persuasive authority, the letter failed to consider the *Burton* decision and several of the other decisions discussed heretofore. *Cf. United States v. Lawson*, 677 F.3d 629, 654 (4th Cir. 2012) (concluding that the Attorney General's opinion was persuasive "[i]n the absence of any South Carolina law to the contrary"). Put simply, we are not convinced that the Attorney General's letter requires us to reach another result.

Finally, the Government relies on the Supreme Court's recent decision in *Stokeling v. United States*, No. 17-5554 (U.S. Jan. 15, 2019). There, the Court considered the question of whether the Florida offense of robbery, as codified in section 812.13(1) of the Florida Statutes, constitutes a "violent felony" under the ACCA's force clause. *See Stokeling*, slip op. at 2-3. Section 812.13(1) defines "robbery" as "the taking of money or other property . . . from the person or custody of another . . . when in the course of the taking there is the use of force." As the *Stokeling* Court explained, under Florida law, force that overcomes the victim's resistance is sufficient to support a robbery

19

conviction. *Id.* at 2. Relying on "the history of [the] ACCA" and the *Johnson I* decision, the Court concluded that the Florida offense of robbery — despite requiring only enough force to overcome the victim's resistance — is a "violent felony" under the ACCA's force clause. *Id.* at 3.

The *Stokeling* Court first explained that a prior version of the ACCA specified "robbery" as a predicate offense and defined "robbery" as "the taking of the property of another from the person . . . *by force or violence*." *See Stokeling*, slip op. at 3-4. The Court observed that this statutory definition of robbery "mirrored" the common law definition, and that — at common law — a person committed robbery by seizing property from another using sufficient force to overcome the victim's resistance. *Id.* at 4. Although the ACCA was later amended to its current version and presently contains no reference to "robbery," the Court determined that, "[b]y retaining the term 'force' in the [current] version of the ACCA[,] . . . Congress made clear that the 'force' required for common-law robbery would be sufficient to justify an enhanced sentence under the new [force] clause." *Id.* at 6. Moreover, the Court reasoned that Congress's amendment of the ACCA to its present form was intended to expand the number of "violent felony" predicate offenses, and that it thus would have been odd for that expansion to leave robbery offenses behind. *Id.*

In addition, the *Stokeling* Court relied on *Johnson I*'s definition of "physical force" to support its decision. *See Stokeling*, slip op. at 8-12. The Court concluded that "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson* [*I*]." *Id.* at 9 (quoting *Johnson I*, 559 U.S. at 139).

20

That is, "robbery that must overpower a victim's will . . . necessarily involves a physical confrontation and struggle." *Id.*

We are not persuaded that *Stokeling* supports the Government's position in this appeal. The ABWO offense and similar assault crimes do not share the same statutory history or textual connection to the ACCA as robbery offenses. Additionally, *Stokeling* reaffirmed *Johnson I*'s definition of physical force, and nothing therein supports the proposition that an offense that can be committed by an attempt to touch another in a rude or angry manner, such as spitting at another, categorically involves the use, attempted use, or threatened use of violent physical force. *See Stokeling*, slip op. at 9-10 (reaffirming that force necessary to commit common law battery does not qualify as "physical force" within meaning of ACCA's force clause). Consequently, *Stokeling* does not support an affirmance of the district court.

IV.

Pursuant to the foregoing, we vacate the judgment and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

21