**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-7071**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOHN RICHARD PROCTOR,

      Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge. (8:04−cr−00160−DKC−1)

Argued: January 27, 2022                      Decided: March 16, 2022

Before GREGORY, Chief Judge, and MOTZ and WYNN, Circuit Judges.

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Motz joined.

**ARGUED:** Jason Edward Neal, HARRIS, WILTSHIRE & GRANNIS LLP, Washington, D.C., for Appellant. Jonathan Scott Tsuei, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, Paresh Patel, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland; Christopher J. Wright, HARRIS, WILTSHIRE & GRANNIS LLP, Washington, D.C., for Appellant. Erek L. Barron, United States Attorney, Baltimore, Maryland, David I. Salem, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

WYNN, Circuit Judge:

John Proctor was sentenced as an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e). After the Supreme Court struck down a provision of that Act as unconstitutional, Proctor filed a 28 U.S.C. § 2255 motion to correct his sentence. The district court denied his motion, however, because it found that Proctor still qualified as an armed career criminal under the statute's "force" clause. Proctor appealed, arguing that this clause is inapplicable because one of his predicate convictions—Maryland assault with intent to prevent lawful apprehension or detainer—is not a categorically "violent felony" for Armed Career Criminal Act purposes. We agree, and therefore reverse the district court's decision and remand with instructions to correct Proctor's sentence.

I.

On December 8, 2004, a grand jury issued a four-count Superseding Indictment charging Proctor with various drug and firearms offenses. In exchange for dismissing two of these charges, Proctor pleaded guilty to one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) ("Count 2"), and one count of unlawful possession of a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g) ("Count 4").

In general, a violation of § 922(g) subjects a defendant to a maximum sentence of ten years' imprisonment. *See* 18 U.S.C. § 924(a)(2). However, the Armed Career Criminal Act provides that a person who violates § 922(g) and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, . . . shall be . . . imprisoned *not less than fifteen years*." *Id.* § 924(e)(1) (emphasis added).

At sentencing, the district court found that Proctor was subject to the fifteen-year mandatory minimum sentence as an armed career criminal based on two serious drug offenses and one violent felony. The "violent felony" in question was a 1986 conviction for assault with intent to prevent lawful apprehension, in violation of the since-repealed Md. Code Ann. art. 27, § 386 (repealed 1996) [hereinafter "§ 386"]. Ultimately, the district court sentenced Proctor to concurrent sentences of 324 months' imprisonment on Counts 2 and 4.

Proctor has made several attempts to reduce his sentence, with some success: in 2011, the district court reduced Proctor's concurrent sentences to 292 months due to retroactive changes to the Sentencing Guidelines; and in 2020, the court further reduced his concurrent sentences to 240 months each pursuant to § 404 of the First Step Act. However, Proctor's initial attempt to vacate his sentence did not fare as well. In 2007, he filed a 28 U.S.C. § 2255 motion that raised claims of ineffective assistance of counsel, but the district court denied his motion and we declined to issue a certificate of appealability. *See United States v. Proctor*, 329 F. App'x 502, 503 (4th Cir. 2009) (per curiam).

But in 2016, this Court granted Proctor authorization to file a second or successive motion under § 2255 after concluding he had made a "prima facie showing" that the new rule of constitutional law announced in *Johnson v. United States* (*Johnson II*), 576 U.S. 591 (2015),[1] and held to apply retroactively to cases on collateral review by *Welch v.*

---

[1] We refer to this case as *Johnson II* because it followed an earlier decision by the same name that interpreted the meaning of the force clause. *See Johnson v. United States* (*Johnson I*), 559 U.S. 133, 140 (2010).

*United States*, 578 U.S. 120, 130 (2016), "may apply to his case," specifically his enhanced

§ 922(g) sentence.[2] J.A. 30.[3]

Before *Johnson II*, the Armed Career Criminal Act defined a "violent felony" as

"any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an

element the use, attempted use, or threatened use of physical force against the person of

---

[2] *Johnson II* does not directly impact Proctor's concurrent drug sentence for Count 2. But in his instant § 2255 motion, Proctor argues that he should be resentenced on *both* counts under the sentencing-package doctrine. In its response below, the Government invoked the concurrent-sentence doctrine, arguing that the court need not decide the merits of Proctor's challenge to his sentence for Count 4 because his concurrent drug sentence remains valid. The district court chose not to exercise its discretion under the concurrent-sentence doctrine; instead, it reached the merits and found the Armed Career Criminal Act still applied to Proctor's sentence for the gun conviction, Count 4. *Proctor v. United States*, No. RWT-16-1671, 2019 WL 141370, at *4 n.2 (D. Md. Jan. 9, 2019). Because the court denied relief on the merits, it also found it unnecessary to examine whether the sentencing-package doctrine applied. *Id.*

On remand, the district court should consider in the first instance whether the sentencing-package doctrine does apply. We express no opinion on what action the district court should take regarding Proctor's drug sentence, but observe that § 2255 "confers a 'broad and flexible' power to the district courts 'to fashion an appropriate remedy,'" including the power to resentence Proctor on Count 2 if the court finds it appropriate. *See United States v. Smith*, 115 F.3d 241, 245 (4th Cir. 1997) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997)) (holding that since the term "sentence" in § 2255 "must be viewed in the aggregate," a district court has jurisdiction to conduct a resentencing on all surviving counts in a multi-count indictment when only one of the counts had been successfully challenged in a collateral proceeding); *United States v. Said*, __ F.4th __, 2022 WL 535197, at *10 & n.19 (4th Cir. Feb. 23, 2022) (reversing the district court's grant of § 2255 relief on two counts while affirming it on one, and noting that on remand, the district court could consider in the first instance whether to resentence the petitioner "on any other count under the sentencing-package doctrine"); *see also United States v. Chaney*, 911 F.3d 222, 226 (4th Cir. 2018) ("[W]e have recognized[ that the sentencing-package theory] provides that in appropriate circumstances resentencing on all counts is a proper remedy under § 2255 for a single unlawful conviction.").

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

another" (the force clause); (2) "is burglary, arson, or extortion, [or] involves use of explosives" (the enumerated clause); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause). 18 U.S.C. § 924(e)(2)(B) (2012).

But *Johnson II* held that the Act's residual clause is "unconstitutionally vague" because it leaves "grave uncertainty about how to estimate the risk posed by a crime" and "how much risk it takes for a crime to qualify as a violent felony." 576 U.S. at 597–98. Thus, because *Johnson II* abrogated the Act's residual clause, § 386 can only qualify as a predicate if it falls under either the enumerated clause or the force clause. Because there is no question that assault with intent to prevent lawful apprehension is not burglary, arson, extortion, or a use-of-explosives offense, Proctor's § 386 conviction must satisfy the Act's force clause to remain a valid predicate. And since the U.S. Probation Office only identified three qualifying prior convictions in Proctor's Presentence Report, Proctor's § 386 conviction must qualify as a predicate for his armed-career-criminal designation to stand.

In his present § 2255 motion, Proctor argues that he no longer qualifies for such a designation because assault with intent to prevent lawful apprehension under § 386 does not satisfy the force clause and therefore cannot serve as one of his three predicate convictions for application of the Armed Career Criminal Act. Specifically, Proctor contends that since assault with intent to prevent lawful apprehension can be accomplished with "no more than de minimis touching of someone in order to prevent arrest," Pet'r's Mot. to Correct Sentence at 8, *United States v. Proctor*, No. RWT-16-1671, 2019 WL 141370 (D. Md. Jan. 9, 2019), it cannot be classified as a "violent felony" under the

5

categorical test for the force clause described in *Descamps v. United States*, 570 U.S. 254, 261 (2013).

The district court rejected this argument, finding that assault with intent to prevent lawful apprehension is indeed a "violent felony" under the Armed Career Criminal Act's "force" clause. *Proctor*, 2019 WL 141370, at *3. As support, the court looked to Maryland case law and found that acts supporting a conviction under § 386 had consistently involved the exercise of more than de minimis force, such as "striking a store employee with a vehicle, firing shots at officers, striking an officer with a vehicle, and striking a homeowner with a bar from a weightlifting set." *Id.* In addition, the district court noted that several state courts had found that assault with intent to prevent lawful apprehension was a "crime of violence" that could support a further state-law conviction for "use of a handgun in the commission of a crime of violence." *Id.* at *4 (quoting *Sangster v. State*, 521 A.2d 811, 821 (Md. Ct. Spec. App. 1987), *aff'd*, 541 A.2d 637 (Md. 1988)). The court also declined to issue a certificate of appealability. *Id.*

Proctor next filed a motion to alter the court's judgment pursuant to Fed. R. Civ. P. 59(e). In his motion, he contended that our en banc decision in *United States v. Aparicio-Soria*, 740 F.3d 152 (4th Cir. 2014) (en banc), had held that an equivalent offense—the Maryland crime of resisting arrest—categorically failed to qualify as a violent felony. He also pointed out that our recent decision in *United States v. Jones*, 914 F.3d 893 (4th Cir. 2019), had concluded that a similar South Carolina offense, assaulting an officer while resisting arrest, was not a "violent felony" because it could be accomplished by de minimis conduct such as offensive touching. Proctor's case was reassigned to a different district

court judge, who rejected his arguments after applying Rule 59(e)'s stringent standard of review. Specifically, the court found that since no Maryland cases had sustained the application of § 386 to such de minimis conduct, there was no "realistic probability that Maryland would apply the offense to conduct that does not involve the use, attempted use, or threatened use of violent physical force against another." J.A. 45.

Proctor timely appealed and requested a certificate of appealability. We granted a certificate of appealability "on the issue of whether Maryland's now-repealed crime of assault with intent to prevent lawful apprehension [under § 386] . . . qualifies as a categorical violent felony for purposes of [the Armed Career Criminal Act]." J.A. 47.

II.

"We review de novo a district court's legal conclusions concerning a denial of § 2255 relief." *Jones*, 914 F.3d at 899. This "encompasses the question of whether a prior conviction qualifies as a 'violent felony' under the [Armed Career Criminal Act]." *Id.*

We begin this inquiry by describing our well-settled test for assessing whether a state offense qualifies as a violent felony under the Armed Career Criminal Act's force clause. Then, we apply this test to the now-repealed Maryland statute at issue.

A.

The Armed Career Criminal Act's force clause defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of *physical force* against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added). Though Congress did not further define "physical force," the Supreme Court has held that "[e]ven by itself, the word 'violent' in

7

§ 924(e)(2)(B) connotes a substantial degree of force." *Johnson v. United States* (*Johnson I*), 559 U.S. 133, 140 (2010).

Thus, "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force." *Id.* Violent force is "force capable of causing physical pain or injury to another person." *Id.* For that reason, de minimis physical force, "such as mere offensive touching, is insufficient to trigger the [Armed Career Criminal Act]'s force clause because it is not violent." *United States v. Middleton*, 883 F.3d 485, 489 (4th Cir. 2018); *see also United States v. Allred*, 942 F.3d 641, 652 (4th Cir. 2019) ("A mere 'offensive touching,' of the sort sufficient to sustain a prosecution for battery at common law, does not amount to 'violent force' under the force clause." (quoting *Johnson I*, 559 U.S. at 140)).

"To determine whether a state crime qualifies as a violent felony under the [Act]'s force clause, we apply the categorical approach[.]"[4] *United States v. Burns-Johnson*, 864

---

[4] Sometimes, however, we start by applying the so-called modified categorical approach. If a statute is "divisible"—meaning it lists "potential offense elements in the alternative"—the "modified categorical approach allows us to look to certain documents like the indictment and jury instructions . . . *solely* to determine 'which of the statute's alternative elements formed the basis' of the defendant's conviction." *United States v. Simmons*, 11 F.4th 239, 254 (4th Cir. 2021) (emphasis added) (citations omitted). Once we do so, "we apply the categorical approach analysis to that offense to determine whether it is a crime of violence." *Id.*

We need not assess whether the modified categorical approach would apply in this case because the result would be the same. If § 386 is divisible, the modified categorical approach would require us to focus on the statute's assault-with-intent-to-prevent-lawful-apprehension prong, because the parties agree (and the Presentence Report indicates) that Proctor was convicted under this prong. Conversely, if § 386 is indivisible, then a strictly categorical approach would require us to look at the least culpable conduct encompassed by the statute, which also would be the assault-with-intent-to-prevent-lawful-apprehension

F.3d 313, 316 (4th Cir. 2017). Under this approach, we "examine only the elements of the state offense and the fact of conviction, not the defendant's conduct." *United States v. Doctor*, 842 F.3d 306, 308 (4th Cir. 2016); *Descamps*, 570 U.S. at 261 ("Sentencing courts may 'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990))).

Once the elements of the offense are identified, we rely on state-court decisions to "determine the *minimum* conduct needed to commit [the] offense." *Doctor*, 842 F.3d at 309 (emphasis added). In other words, we look for the "'most innocent conduct' that the law criminalizes." *Middleton*, 883 F.3d at 488–89. If there is a "'realistic probability, not [just] a theoretical possibility,' that a state would actually punish that conduct," we then compare that minimum conduct with "the definition of violent felony in the force clause." *Doctor*, 842 F.3d at 308–09 (quoting *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016)).

Importantly, while state law determines the minimum conduct needed to commit a state offense and whether a "realistic probability" of prosecuting that conduct exists, the separate issue of whether said conduct satisfies the *Armed Career Criminal Act's* force clause "is a question of federal law, not state law." *Johnson I*, 559 U.S. at 138. And if that minimum conduct "does not involve the use, attempted use, or threatened use of violent physical force against another, then the offense is not categorically a 'violent felony' under the [Act]'s force clause, and it is thus not an [Armed Career Criminal Act] predicate under

---

prong. Either way, we must "apply the categorical approach analysis to [assault with intent to prevent lawful apprehension] to determine whether it is a crime of violence." *Id.*

that clause." *Jones*, 914 F.3d at 901; *see also Middleton*, 883 F.3d at 488 ("If the offense 'sweeps more broadly' than the [Act]'s definition of a violent felony, the offense does not qualify as an [Armed Career Criminal Act] predicate." (quoting *Descamps*, 570 U.S. at 261)).

## B.

With this framework in mind, we now turn to the Maryland statute at issue. At the time of Proctor's conviction,[5] § 386 provided, in relevant part:[6] "If any person . . . shall assault . . . any person . . . with intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained, every such offender . . . shall be guilty of a felony." Md. Code Ann. art. 27, § 386 (1982 Repl.) (repealed 1996).

Our analysis in this case proceeds in three steps. First, "we look for the least culpable conduct" encompassed by § 386's assault element under state law. *Middleton*, 883 F.3d at 489. Second, we ask whether § 386's added mens rea element—that the assault be committed with intent to prevent lawful apprehension—circumscribes the reach of the

---

[5] When analyzing whether a state conviction can serve as an Armed Career Criminal Act predicate, we look to the state law at the time of the conviction. *See McNeill v. United States*, 563 U.S. 816, 820 (2011) (holding that a sentencing court applying the Armed Career Criminal Act must conduct a "backward-looking" inquiry into prior convictions, meaning the court must "consult the law that applied at the time of th[ose] conviction[s]"). Thus, it makes no difference that § 386 was later repealed.

[6] Section 386 includes other language that may encompass violent felonies for Armed Career Criminal Act purposes, assuming the statute is divisible. *See supra* note 4 (discussing the question of divisibility); *infra* note 9 (quoting the full text of the statute). Our analysis of § 386 here, however, only applies to the pertinent assault-with-intent-to-prevent-lawful-apprehension language.

statute such that it only punishes physically violent conduct. Third, and finally, we assess whether there is a "realistic probability" that Maryland would have punished the minimally culpable conduct that can satisfy both the assault and intent elements.

1.

We begin with the minimum conduct necessary to satisfy § 386's assault element. Because the statute did not define "assault," state courts[7] looked to the common law to interpret this element. *See Hall v. State*, 516 A.2d 204, 207 (Md. Ct. Spec. App. 1986) (applying the common-law elements of assault to the crime of assault with intent to prevent lawful apprehension under § 386); *Claggett v. State*, 670 A.2d 1002, 1010 (Md. Ct. Spec. App. 1996) (holding the Maryland Legislature "clearly embraced" the common-law definitions of assault and battery in § 386); *Barrios v. State*, 702 A.2d 961, 970 (Md. Ct. Spec. App. 1997) (applying the common-law definition of assault to § 386). At common law, the crime of "assault" could "connote any of three distinct ideas": (1) a battery; (2) an "attempted battery"; or (3) the "placing of a victim in reasonable apprehension of an imminent battery." *Lamb v. State*, 613 A.2d 402, 404 (Md. Ct. Spec. App. 1992).

A battery, in turn, is "any unlawful force used against the person of another, *no matter how slight*." *Kellum v. State*, 162 A.2d 473, 476 (Md. 1960) (emphasis added). For example, a "person may commit battery by kissing another without consent, touching or

---

[7] When no decisions of the state's highest court have directly addressed a matter, "decisions of the state's intermediate appellate court 'constitute the next best indicia of what state law is.'" *United States v. Simmons*, 917 F.3d 312, 320 (4th Cir. 2019) (quoting *Gardner*, 823 F.3d at 803). In Maryland, the intermediate appellate court is the Court of Special Appeals. The highest court is the Court of Appeals.

tapping another, jostling another out of the way, throwing water upon another, rudely seizing a person's clothes, cutting off a person's hair, throwing food at another, or participating in an unlawful fight." *State v. Duckett*, 510 A.2d 253, 257 (Md. 1986) (cleaned up); *see also Epps v. State*, 634 A.2d 20, 23 (Md. 1993) ("Projecting a relatively small amount of water onto the person of another at waist level or below, and with no great force, . . . qualif[ies] as criminal [battery] if intentionally done[.]"). Battery in Maryland may thus be committed with de minimis physical contact.

Unsurprisingly, because in Maryland assault by definition involves battery, attempted battery, or creating the reasonable apprehension of imminent battery, Maryland courts have likewise held that assaults may involve innocuous conduct. *See Dixon v. State*, 488 A.2d 962, 967 (Md. 1985) (holding that attempted-battery or reasonable-apprehension assaults may be satisfied by "any attempt to apply *the least force* to the person of another" (emphasis added) (quoting *Lyles v. State*, 269 A.2d 178, 179 (Md. Ct. Spec. App. 1970))); *Nicolas v. State*, 44 A.3d 396, 406–07 (Md. 2012) ("Under Maryland common law, an assault of the battery variety is committed by causing *offensive* physical contact with another person." (emphasis added)).

For that reason, we have repeatedly held that simple assault[8] in Maryland is not a "violent felony" for Armed Career Criminal Act purposes. *See United States v. Royal*, 731

---

[8] In 1996, Maryland "abrogat[ed] the common law offenses of assault and battery" and replaced them with statutory first- and second-degree assault. *Snyder v. State*, 63 A.3d 128, 135 (Md. Ct. Spec. App. 2013). However, Maryland "specifically provid[ed] that the crimes retain their judicially determined meanings." *Id.*; *see* Md. Code Ann., Crim. Law § 3-201(b) ("'Assault' means the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings."). Thus, "the substantive law of 'simple'

F.3d 333, 342 (4th Cir. 2013) ("[B]ecause . . . Maryland's second-degree assault statute reaches any unlawful touching, whether violent or nonviolent and no matter how slight, . . . [a] second-degree assault conviction does not constitute a predicate 'violent felony' supporting a sentencing enhancement under [the Armed Career Criminal Act]."); *see also Karimi v. Holder*, 715 F.3d 561, 568 (4th Cir. 2013) ("[A]s we have repeatedly observed, Maryland's second-degree assault statute reaches violent and nonviolent touching alike[,] . . . [so] convictions under the statute . . . cannot categorically be crimes of violence."). And again, Maryland courts have directed us to the elements of common-law assault to understand the meaning of "assault" in § 386. *E.g.*, *Hall*, 516 A.2d at 207. It necessarily follows that the common-law assault element in § 386, standing alone, is not a violent felony.

The Government resists this straightforward application of our precedent, arguing that the legislature did *not* intend to incorporate the common-law meaning of assault into § 386. As support, it notes that under the *noscitur a sociis* canon of construction, "a word is known by the company it keeps." Response Br. at 21 (quoting *McDonnell v. United States*, 136 S. Ct. 2355, 2368 (2016)). And here, the word "assault" in § 386 keeps company

---

criminal assault remains, more or less, the same as it was before the 1996 revisions," and statutory second-degree assault—the most innocent form of assault—still "encompasses three types of common law assault and battery: (1) the 'intent to frighten' assault, (2) attempted battery[,] and (3) battery." *Snyder*, 63 A.3d at 134–35; *see also Nicolas*, 44 A.3d at 406 ("As indicated by the statutory language, the offense of second[-]degree assault retains its common law meaning."). Therefore, cases interpreting Maryland's second-degree assault statute are directly applicable to the common-law assault element in § 386.

13

with some "aggravated and violent" conduct.[9] *Id.* at 22. Specifically, the statute also punishes individuals who "unlawfully shoot at any person," "maliciously stab, cut or wound any person," or "beat any person." Md. Code Ann. art. 27, § 386. However, the Government fails to identify any state cases suggesting that these other terms implicitly give "assault" an "'elevated' meaning." *Jones*, 914 F.3d at 904 (criticizing the Government for the same failure in a case involving a South Carolina statute). And if the Maryland "legislature intended for an 'assault' to carry a unique meaning within the context of [§ 386], it knew how to specify that meaning."[10] *Id.*

---

[9] The full statutory section in effect when Proctor was convicted reads as follows:

> If any person shall unlawfully shoot at any person, or shall in any manner unlawfully and maliciously attempt to discharge any kind of loaded arms at any person, or shall unlawfully and maliciously stab, cut or wound any person, or shall assault or beat any person, with intent to maim, disfigure or disable such person, or with intent to prevent the lawful apprehension or detainer of any party for any offense for which the said party may be legally apprehended or detained, every such offender, and every person counseling, aiding or abetting such offender shall be guilty of a felony and, upon conviction thereof, be punished by confinement in the penitentiary for a period not less than eighteen months nor more than ten years.

Md. Code Ann. art. 27, § 386 (1982 Repl.) (repealed 1996).

[10] The Government makes two further arguments in favor of its "elevated" reading, but neither is persuasive. First, it notes that Maryland courts have consistently recognized assault with intent to prevent lawful apprehension as an "*aggravated* assault." Response Br. at 19 (emphasis added) (citing *Sangster*, 521 A.2d at 821). To the extent that the Government is suggesting that § 386's aggravating element—intent to prevent lawful apprehension—"elevate[s an] otherwise nonviolent assault crime[]" to the level of a violent felony, it is incorrect, for reasons explained below. *Id.* at 20; *see infra* Section II.B.2.

Second, the Government argues that if assault with intent to prevent lawful apprehension "was meant to encompass the same conduct as common law 'assault' and nothing more, the Maryland legislature would not have created a separate offense." Response Br. at 22. But state legislatures craft enhanced punishments for the same actus

More importantly, the Government's argument overlooks the fact that Maryland state courts have already held that the word "assault" in § 386 incorporated that term's common-law definition. *See Hall*, 516 A.2d at 207; *Claggett*, 670 A.2d at 1010; *Barrios*, 702 A.2d at 970. Because we "must rely on the interpretation of the offense rendered by the courts of the state in question," *Burns-Johnson*, 864 F.3d at 316, we have little trouble concluding that § 386's assault element encompassed de minimis conduct, and was therefore not, on its own, a categorically violent felony.

2.

But that does not end our inquiry. After all, "[t]he categorical approach doesn't require that *each* element of an offense involve use of force; it requires that the offense *overall* include use of violent force." *United States v. Harris*, 853 F.3d 318, 321–22 (6th Cir. 2017). So, we must assess if § 386's relevant additional element—that the assault be committed with the intent to prevent the lawful apprehension or detainer of oneself or someone else—circumscribes the broad universe of conduct captured by common-law assault to exclude truly de minimis conduct from the statute's ambit. We conclude that it does not.

---

reus committed with more culpable mentes reae all of the time. We can think of many reasons why the Maryland legislature may have wanted to supplement the common law by prescribing an enhanced punishment for those who commit assault to prevent the lawful apprehension or detention of suspected criminals, as opposed to those who commit assault for other reasons. The mere fact that this offense may share an actus reus with another does not make them redundant.

i.

To be sure, at times we have held that an intent element can do just that. For example, in *United States v. Battle*, we held that a Maryland conviction for assault with intent to murder "satisfies the [Armed Career Criminal Act's] force clause because the offense contemplates an *intentional causation of bodily injury*," and "it is impossible to intend to cause injury or death without physical force as contemplated under the [Act]." 927 F.3d 160, 166–67 (4th Cir. 2019) (emphasis added); *see also United States v. Dinkins*, 714 F. App'x 240, 243 (4th Cir. 2017) (per curiam) (unpublished but orally argued) (holding the South Carolina offense of assault and battery with intent to kill was "categorically violent" because a defendant has to have "intentionally performed an act capable of causing death" to be convicted under the statute); *United States v. Redd*, 372 F. App'x 413, 415 (4th Cir. 2010) (per curiam) (concluding Maryland first-degree assault was a violent felony because the statute requires an intent "to cause serious physical injury to another," so a conviction necessarily "encompass[ed] the use or attempted use of physical force").

But the same is not true here. Section 386 "does not have as an element the intentional causation of death or injury," *Battle*, 927 F.3d at 166; it only requires an intent to prevent one person from lawfully apprehending or detaining another. The Government baldly asserts that this intent is "incompatible" with "the many varieties of *de minimis* assault" because any "assault committed with the purpose of stopping an individual from effecting a lawful apprehension . . . invariably requires violent force." Response Br. at 16–17, 21. However, it does not cite a single Maryland case as support for its conclusory

16

statement. As far as we can tell, the Maryland courts have never identified such an incompatibility.

On the contrary, the state courts have repeatedly explained that an "offensive touching" or the "unlawful application of force to another, however slight," could serve as the basis for a § 386 conviction, without suggesting that the statute's specific-intent element circumscribes the range of qualifying assaults in any way. *Claggett*, 670 A.2d at 1009. Nor, in the absence of Maryland case law supporting its argument, has the Government pointed to any commonsense reason why innocuous conduct such as "touching or tapping another," *Duckett*, 510 A.2d at 257, would "invariably require[] violent force," Response Br. at 17, when undertaken with the intent to, for example, distract or misdirect a would-be apprehender.

If any doubt remains regarding § 386's categorically nonviolent nature, it is erased by a comparison to the related crime of resisting arrest. Maryland courts have noted that "preventing lawful apprehension, as described in § 386, is [generally] equivalent [to] resisting arrest," *Hall*, 516 A.2d at 210, save for the fact that the latter requires an assault "be committed against a police officer" by the arrestee, while the former applies more broadly to assaults by anyone against "*any* person" who attempts to "lawfully apprehend or detain an individual," *Claggett*, 670 A.2d at 1006. And we have held that Maryland's crime of resisting arrest is not a categorically violent crime because Maryland courts have consistently concluded that this offense "requires only offensive physical contact."[11]

---

[11] *Aparicio-Soria* examined whether the Maryland crime of resisting arrest was a "crime of violence" for federal Sentencing Guidelines purposes. 740 F.3d at 153. But as

17

*Aparicio-Soria*, 740 F.3d at 155. Given this parallel, it would be odd to find that resisting arrest—which can be accomplished by an offensive touching—is *not* a violent felony, while the related crime of assault with intent to prevent lawful apprehension—which state courts also say can be accomplished with an offensive touching—*is* a categorically violent felony.

ii.

The Government makes two overarching counterarguments, but neither is persuasive. First, it argues that the logic of the U.S. Supreme Court's decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019), compels us to find that assault with intent to prevent lawful apprehension is a violent felony. In *Stokeling*, the Court considered whether the Florida offense of robbery was a "violent felony" under the Armed Career Criminal Act's force clause. *Id.* at 550. Florida defined robbery as "the taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear." *Id.* at 554 (quoting Fla. Stat. § 812.13(1) (1995)). The Supreme Court of Florida had interpreted this provision to require "*resistance* by the victim that is *overcome* by the *physical force* of the offender"—mere "snatching of property from another" did not suffice. *Id.* at 555 (emphases added) (quoting *Robinson v. State*, 692 So.2d 883, 886 (Fla. 1997)). Because it follows that "the force necessary to overcome a victim's physical resistance is inherently 'violent,'" the Court held

---

we noted there, "because the language of the force clause in the Armed Career Criminal Act and the [definition of a crime of violence in the] Guideline is identical," cases construing each term are "helpful in construing the other," if not "controlling." *Id.* at 154.

18

that Florida robbery qualifies as a "violent felony" under the Act's force clause. *Id.* at 553, 555.

The Government urges us to adopt the same logic in the present case. Specifically, it contends that "[i]t is not possible to assault a person with the intent to prevent lawful apprehension without also employing enough force to overcome that person's effort to apprehend." Response Br. at 16. Because the force capable of overcoming such an effort and "overpower[ing] [the other individual's] will" inherently involves a "physical confrontation and struggle," the Government argues, a conviction for assault with intent to prevent lawful apprehension "invariably requires violent force." *Id.* at 16–17 (quoting *Stokeling*, 139 S. Ct. at 553).

This analogy is fatally flawed, for a few reasons. To start, the Government's argument makes several unjustified logical leaps. Though it assumes that a person assaulting another with the intent to prevent lawful apprehension must be "employing enough force to overcome that person's effort to apprehend," *id.* at 16, it provides no cases or authority to support that proposition. While it follows that a robber taking property from another by force must overcome the resistance of the victim—after all, a forceful taking is an element of the offense—§ 386 does not contemplate or require a defendant to overcome a pursuer's efforts to lawfully apprehend someone. On its face, the statute only requires (1) an assault (2) with intent to prevent lawful apprehension. To the extent the Government is arguing that § 386 implicitly requires that a defendant also employ sufficient force to "overpower a victim's will," *Stokeling*, 139 S. Ct. at 553, it is erroneously grafting an additional element onto the statute.

The Government also cites no cases that suggest that an assault made with intent to prevent lawful apprehension must inherently involve a "physical confrontation and struggle" between the victim and defendant that is "invariably" violent. Response Br. at 16–17. In fact, as explained above, Maryland courts have consistently signaled the opposite by holding that common-law assault—including de minimis, offensive assaults—can form the basis of a § 386 conviction. *See Hall*, 516 A.2d at 207; *Claggett*, 670 A.2d at 1010; *Barrios*, 702 A.2d at 970.

Illogical leaps aside, the Government's argument is also directly foreclosed by our decision in *United States v. Jones*. In *Jones*, we entertained a similar *Stokeling* argument that a conviction for South Carolina assault and battery while resisting arrest inherently involved violent force necessary to overcome an officer's efforts to arrest the defendant. 914 F.3d at 905. But as we explained there, assault and battery while resisting arrest "and *similar assault crimes* do not share the same statutory history or textual connection to the [Armed Career Criminal Act] as robbery offenses." *Id.* (emphasis added). The *Stokeling* Court had heavily relied on this history, observing that a "prior version of the [Act] specified 'robbery' as a predicate offense," and that while the Act presently contained no reference to robbery, other textual clues "made clear that the 'force' required for common-law robbery would be sufficient to justify an enhanced sentence under the new [force] clause." *Id.* (quoting *Stokeling*, 139 S. Ct. at 550–51).

In *Jones*, we held that no such historical or textual clues supported extending *Stokeling* to South Carolina assault and battery while resisting arrest. We indicated that this conclusion seemed especially appropriate given that the *Stokeling* Court had expressly

20

"reaffirmed *Johnson I*'s definition of physical force," which the Court acknowledged did not extend to offenses that could be committed with de minimis offensive touching, like common-law battery. *Id.* (citing *Stokeling*, 139 S. Ct. at 552–53). In the present case, the Government offers no reason why we can or should come to a different conclusion than we did in *Jones* when it comes to the "similar assault crime[]" of assault with intent to prevent lawful apprehension under § 386. *Id.*

In its second counterargument, the Government contends—consistent with the district court's opinion—that § 386 is a "violent felony" for Armed Career Criminal Act purposes because Maryland courts have categorized assault with intent to prevent lawful apprehension as a "crime of violence" for state-law purposes. Though the Government's state-law premise is technically true, *see Hall*, 516 A.2d at 210, this argument is a nonstarter. In the mid-1980s—when Proctor was convicted under § 386 and when *Hall* was decided—Maryland law enumerated certain offenses that qualified as crimes of violence under state law, including the catch-all category of "assault with intent to commit any other offense punishable by imprisonment for more than one year." *Sangster*, 521 A.2d at 821 (quoting Md. Code Ann. art. 27, § 441(e) (1982 and 1986 Cum. Supp.)). Thus, under state law, a crime of violence was (1) any enumerated crime; or (2) any assault committed with intent to commit another offense punishable by a certain prison term.

But whether the Maryland legislature chose to list a crime as a crime of violence or whether the punishment for an intended offense exceeded a specified cutoff tells us nothing conclusive about the level of force inherent in the offense. After all, the "meaning of 'physical force' in [the Armed Career Criminal Act] is a question of *federal* law, not state

21

law." *Johnson I*, 559 U.S. at 138 (emphasis added). And as the Supreme Court has instructed us, "in answering that question we are not bound by a state court's interpretation of a similar—or even identical—state statute." *Id.* That seems particularly prudent here, where the Maryland Court of Special Appeals categorized assault with intent to prevent lawful apprehension as a "crime of violence" under option (2) listed above due solely to the *length of punishment involved*. *See Hall*, 516 A.2d at 210. Because the term of imprisonment for an offense has no inherent bearing on the minimum physical force required to commit that offense, the district court erred by relying on this factor.

In conclusion, § 386's specific-intent element does not exclude de minimis assaults from the statute's ambit.

### 3.

Which brings us to our last question: whether there is a "realistic probability, not a theoretical possibility,' that [Maryland] would actually [have] punish[ed]" similarly de minimis conduct under § 386 before its repeal. *Doctor*, 842 F.3d at 308.

The district court found there was no "realistic probability" of such an outcome. J.A. 45. Critically, it noted that Proctor had failed to identify any cases prosecuted under § 386 that clearly punished de minimis conduct. Rather, assault-with-intent-to-prevent-lawful-apprehension convictions generally involved more serious conduct, such as "striking a store employee with a vehicle, firing shots at officers, striking an officer with a vehicle, and striking a homeowner with a bar from a weightlifting set." *Proctor*, 2019 WL 141370, at \*3. The Government echoes these findings, arguing that "[a]ll of the hypothetical conduct that Proctor proposes would, could or should satisfy the statute has not occurred

22

in reality and are purely figments of Proctor's 'legal imagination.'" Response Br. at 26 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).

But "this case does not require an exercise of imagination, merely mundane legal research skills." *Aparicio-Soria*, 740 F.3d at 157. To wit, "we have precedent from Maryland's highest court stating that the degree of force required as an element of [common-law assault] is 'offensive physical contact.'" *Id.*; *see Dixon*, 488 A.2d at 967 (holding that attempted-battery or reasonable-apprehension assaults may be satisfied by "any attempt to apply *the least force* to the person of another" (emphasis added)); *Nicolas*, 44 A.3d at 407 ("[A]n assault of the battery variety is committed by causing *offensive* physical contact with another person." (emphasis added)).

We also have precedent from Maryland appellate courts stating that an assault with intent to prevent lawful apprehension "clearly" "may be accomplished" by such conduct. *Claggett*, 670 A.2d at 1010; *see also Hall*, 516 A.2d at 208 (agreeing that § 386's assault element could be satisfied by "[a]ny attempt to apply the least force to the person of another" (quoting *Lyles*, 269 A.2d at 179)); *Barrios*, 702 A.2d at 970 (applying the common-law definition of assault to § 386). Therefore, "[w]e do not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors w[ould have] charge[d] defendants engaged in non-violent offensive physical contact with [assault with intent to prevent lawful apprehension]"—we know that they could have because the state's appellate courts "ha[ve] said so." *Aparicio-Soria*, 740 F.3d at 158.

To be sure, at times we have faulted defendants for failing to identify a case in which the state successfully prosecuted the de minimis or overbroad conduct alleged. *See, e.g.*,

*Burns-Johnson*, 864 F.3d at 319 (rejecting the defendant's argument that North Carolina statutory armed robbery was not a violent felony because it could be committed unintentionally, when the defendant failed to produce "any North Carolina case in which a defendant was convicted of statutory armed robbery through the reckless, negligent, or accidental use of a dangerous weapon"); *Doctor*, 842 F.3d at 312 (faulting a defendant convicted of South Carolina robbery for failing to produce, among other things, any "examples of South Carolina cases that find de minimis actual force sufficient to sustain a conviction for robbery by violence"). But this failure is by no means dispositive, as our en banc decision in *Aparicio-Soria* makes clear. 740 F.3d at 157–58 (identifying no on-point examples of Maryland resisting-arrest convictions involving de minimis conduct but nonetheless concluding that resisting arrest was not a categorically violent felony).

In fact, we have readily found a reasonable probability of prosecution for nonviolent conduct where (1) a state statute plainly covers such conduct, *see United States v. Salmons*, 873 F.3d 446, 451 (4th Cir. 2017) (holding that a defendant could simply "point to the statutory text . . . to demonstrate that a conviction for a seemingly violent state crime could in fact be sustained for nonviolent conduct"); *accord United States v. Titties*, 852 F.3d 1257, 1274–75 & 1275 n.23 (10th Cir. 2017) (collecting cases and explaining that a defendant is not required to seek out "instances of actual prosecutions for the means that did not satisfy" the Armed Career Criminal Act when the state statute at issue "specifically says" that it reaches such nonviolent conduct); or (2) state courts have clearly greenlit such an application, *see Aparicio-Soria*, 740 F.3d at 157–58 (dismissing a "mountain of cases" that collectively suggested the Maryland crime of resisting arrest involved the use of

24

violent force because state-court precedent stated that "non-violent offensive physical contact" could satisfy the offense).

Our recent decision in *United States v. White*, 24 F.4th 378 (4th Cir. 2022), is an instructive example of the latter situation. In that case, the defendant argued that Virginia common-law robbery was not a categorically violent felony because it could be committed by "threatening to accuse the victim of having committed sodomy." *Id.* at 379. However, the Supreme Court of Virginia "only had referenced this theory of robbery *in dicta* in decisions issued before 1939, and *never* had applied such a theory of robbery to a particular defendant." *Id.* at 380 (emphases added). Nevertheless, because we were "uncertain" whether the state courts would endorse such a theory of robbery, we certified that question to the Supreme Court of Virginia. *United States v. White*, 987 F.3d 340, 345 (4th Cir.), *certified question answered*, 863 S.E.2d 483 (Va. 2021). After the state court responded that this theory was indeed viable, we were "compel[led]" by "principles of federalism" to hold that Virginia common-law robbery was not a violent felony under the Act's force clause because it could be committed without violent force. *White*, 24 F.4th at 380–81.

Here, as explained above, the Maryland courts have clearly held that an assault with intent to prevent lawful apprehension can be accomplished with de minimis conduct such as an offensive touching. And because such conduct "does not involve the use, attempted use, or threatened use of violent physical force against another, the [§ 386 assault-with-intent-to-prevent-lawful-apprehension] offense is not categorically a 'violent felony' under the [Armed Career Criminal Act]'s force clause." *Jones*, 914 F.3d at 903.

## III.

For the foregoing reasons, we reverse the district court's denial of Proctor's § 2255 motion and remand with instructions to grant the § 2255 motion, "vacate and set the judgment aside," and, at minimum, correct Proctor's § 922(g) sentence (Count 4). 28 U.S.C. § 2255. On remand, the district court should also consider the applicability of the sentencing-package doctrine to Proctor's § 841(a)(1) sentence (Count 2). *See supra* note 2.

*REVERSED AND REMANDED*