**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-4588**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICKY DEMARCO ROBINSON,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:21-cr-00108-FDW-DSC-1)

Argued:  December 5, 2023                              Decided:  February 13, 2024

Before NIEMEYER and WYNN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wynn and Senior Judge Traxler joined.

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

NIEMEYER, Circuit Judge:

The district court in this case enhanced Ricky Robinson's sentence for possession of a firearm by a felon based on U.S.S.G. § 2K2.1(a)(2), which increases an advisory sentencing range when the defendant has at least two prior felony convictions qualifying as either a "crime of violence" or a "controlled substance offense." The court concluded that Robinson had two such convictions, including one for North Carolina assault inflicting physical injury by strangulation, in violation of N.C. Gen. Stat. § 14-32.4(b).

Robinson contends that North Carolina assault by strangulation is not a crime of violence, even though we held that it categorically was in *United States v. Rice*, 36 F.4th 578, 587 (4th Cir. 2022). He argues that our decision in *Rice* is no longer binding because it relied on an analysis that was prohibited by the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845, 857–59 (2022), which was handed down shortly after we decided *Rice*. In *Taylor*, the Supreme Court rejected, as inconsistent with the categorical approach, an analysis that depends on survey evidence as to how the crime is "normally committed or usually prosecuted." *Id*. at 858. The Court concluded that such an "empirical inquiry" was "atextual" and inconsistent with the categorical approach's focus on the elements of the offense. *Id*. at 858, 860.

The sole issue presented by this appeal is whether our holding in *Rice* remains good law following *Taylor*, such that the district court properly enhanced Robinson's sentence based on his prior North Carolina conviction for assault by strangulation. After carefully considering both *Taylor* and *Rice*, we conclude that *Rice*'s holding remains valid and accordingly affirm Robinson's sentence.

2

I

After Robinson pleaded guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), the probation officer prepared a presentence report that concluded that Robinson's base offense level was 24, which was elevated under U.S.S.G. § 2K2.1(a)(2) because Robinson had, prior to committing the federal firearm offense, been convicted of at least two felony offenses, each of which qualified as either a "crime of violence" or a "controlled substance offense." The presentence report identified the prior convictions specifically as a 2015 North Carolina felony conviction for "assault by strangulation" and a 2007 North Carolina felony conviction for selling cocaine. The report also applied two other enhancements — a 2-level stolen-firearm enhancement under § 2K2.1(b)(4)(A) and a 4-level enhancement under § 2K2.1(b)(6)(B) that applies when the defendant uses a firearm in connection with another felony offense — as well as a 3-level reduction for acceptance of responsibility. The report thus calculated Robinson's total offense level as 27. That offense level, when combined with Robinson's criminal history category (Category IV) and accounting for the ten-year statutory maximum, resulted in an advisory sentencing range of 100 to 120 months' imprisonment.

Robinson filed objections to the presentence report. For one, he contended that his North Carolina conviction for assault inflicting physical injury by strangulation did not categorically qualify as a crime of violence because the offense could be "committed with a *mens rea* of negligence or recklessness" and a crime must have a more culpable *mens rea* to qualify as a crime of violence. He therefore maintained that his base offense level should

3

have been 20 under § 2K2.1(a)(4)(A), rather than 24 under § 2K2.1(a)(2). He also objected to the probation officer's application of a 4-level enhancement under § 2K2.1(b)(6)(B) for his having used a firearm "in connection with another felony offense," claiming that the offense identified for that enhancement was not a felony, but a misdemeanor.

At the sentencing hearing on August 18, 2022, the court addressed Robinson's objections, asking the parties if they agreed that this court's recent decision in *Rice* made clear that North Carolina assault by strangulation was indeed a crime of violence. Robinson's counsel replied:

> We do, your Honor. We would preserve our objection to that in the event that it, you know, continues further. At this point I don't think it's going to, but we would like to preserve that objection, but we do agree that the *Rice* decision controls this Court.

And in connection with Robinson's objection to the 4-level enhancement for having used a firearm "in connection with another felony," the government agreed that the enhancement was inapplicable because the gun use related to a crime that was not a felony. Accordingly, the district court sustained that objection.

At bottom, the court determined that Robinson's total offense level was 23 and, when combined with Criminal History Category IV, that his advisory sentencing range was 70 to 87 months' imprisonment. After hearing arguments from counsel as to the appropriate sentence, the court sentenced Robinson to 82 months' imprisonment and three years of supervised release.

From the district court's judgment dated August 23, 2022, Robinson filed this appeal, challenging only the district court's enhancement of his sentence based on his prior

4

North Carolina conviction for assault by strangulation and contending that that offense does not, under the analysis prescribed by *Taylor*, categorically qualify under § 2K2.1(a)(2) as a crime of violence.

## II

Robinson acknowledges, as he must, that our decision in *Rice* — where we held that "[t]he North Carolina crime of assault inflicting physical injury by strangulation is a crime of violence under the categorical approach," 36 F.4th at 579 — is squarely on point with respect to his argument that his prior conviction for that exact same offense should not have been classified as a conviction for a crime of violence. His argument on appeal is simply that *Rice* no longer "remains binding under the Supreme Court's intervening decision in *Taylor*," which was decided just a few weeks after *Rice*.

Robinson explains his position more fully. He contends that *Rice* "relied on a survey of the conduct in published state cases to conclude that the offense does qualify [as a crime of violence]" and that it relied "in particular on the defendant's failure to identify 'a single case' where the conduct described was negligent or reckless." (Quoting *Rice*, 36 F.4th at 584). "This survey-based methodology," he maintains, "cannot be squared with the intervening decision in *United States v. Taylor*," which, he states, "forecloses the use of such reasoning under the categorical approach." He thus asks us to recognize that *Rice* is "no longer . . . binding on panels of this Court." And he argues further that when we "re-evaluate" whether North Carolina assault by strangulation categorically qualifies as a crime of violence "under the *Taylor* framework," we will be required to conclude that it does not

5

so qualify because the crime can be committed with a "culpably negligent mens rea." Accordingly, he requests that we remand this case for resentencing without the enhancement.

The central question thus presented is whether *Rice* remains binding following *Taylor*, a question that requires our close examination of the two decisions.

First, as background, it is uncontroverted that to enhance a defendant's advisory sentencing range for a violation of § 922(g)(1) in the manner the court did here, a court must find that the defendant committed that offense "subsequent to sustaining at least two felony convictions of either a *crime of violence* or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2) (emphasis added). Under the Sentencing Guidelines, a felony offense qualifies as a crime of violence if it "has *as an element* the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1) (emphasis added); *see also id.* § 2K2.1 cmt. n.1 (incorporating the definition of "crime of violence" given in § 4B1.2(a)). Physical force in that context is understood to mean "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). In addition, to qualify under this definition, the crime must have been committed with a *mens rea* more culpable than mere recklessness or negligence. *See Borden v. United States*, 593 U.S. 420, 428–29 (2021) (plurality opinion). Therefore, in applying the categorical approach, a court must look to the crime of conviction's statutory text, as construed by controlling case law, and determine whether the government is required to prove, *as elements of the crime*, that the defendant (1) used force capable of

6

causing injury or pain (or attempted or threatened to do so) and (2) committed the crime with a *mens rea* more culpable than mere recklessness or negligence.

In *Taylor*, decided about two weeks after we decided *Rice*, the Supreme Court applied this established methodology and held that the federal crime of attempted Hobbs Act robbery did not qualify as a crime of violence under 18 U.S.C. § 924(c) because the offense, based on its stated elements, could be committed by a defendant who intended to commit a Hobbs Act robbery and took a "substantial step" toward its commission but never "got to the point" of using, attempting to use, or even threatening to use physical force. 596 U.S. at 851–52. This analysis was not new. What the *Taylor* Court added, however, was that, in applying the categorical approach, a court may not inquire as to how the crime is normally committed. Rather, it must address "[t]he only relevant question [of] whether the . . . felony at issue *always* requires the government to prove . . . the use, attempted use, or threatened use of force." *Id.* at 850 (emphasis added). The categorical approach was thus rendered an *interpretive* one focused on the meaning of the crime's elements, not an *empirical* one based on evidence of how and when the government prosecutes the crime.

The government in *Taylor* argued that such an approach was too narrow and that, in practice, it generally only prosecuted people for attempted Hobbs Act robbery who had at least threatened force (*i.e.*, made a "communicated threat"). 596 U.S. at 857. Indeed, the government faulted Taylor "for failing to identify a single case in which it ha[d] prosecuted someone for attempted Hobbs Act robbery without proving a communicated threat." *Id.* In rejecting this argument, the Court pointed to several problems, including "the oddity of placing a burden on the defendant to present empirical evidence about the government's

7

own prosecutorial habits," as well as "the practical challenges such a burden would present in a world where most cases end in plea agreements, [such that] not all of those cases make their way into easily accessible commercial databases." *Id*. But the Court focused mainly on its core position that the government's approach of considering empirical evidence about government prosecutions would be inconsistent with the categorical approach. As the Court explained:

> The government's theory cannot be squared with the statute's terms. To determine whether a federal felony qualifies as a crime of violence, § 924(c)(3)(A) doesn't ask whether the crime is *sometimes* or even *usually* associated with communicated threats of force (or, for that matter, with the actual or attempted use of force). It asks whether the government must prove, as an *element* of its case, the use, attempted use, or threatened use of force.

*Id*. at 857–58. The Court observed that the government's empirical-evidence approach was a "move" *away from the categorical approach* to an approach that surveys how the "crime of conviction is normally committed or usually prosecuted." *Id*. at 858. The Court thus characterized the government's approach as "atextual" and therefore inconsistent with the categorical approach, which focuses on the text of the statute and its interpretation in case law.

In sum, *Taylor* instructs that in applying the categorical approach and determining whether the crime of conviction constitutes a crime of violence, a court must consider only what the government must *always* prove as elements of the offense, as required by the text or by interpretations of the offense by governing decisional law. *See Johnson*, 559 U.S. at 138 (recognizing that, in applying the categorical approach to a state crime, it was "bound by" the state "Supreme Court's interpretation of state law, including its determination of

8

the elements of" the state offense); *see also Taylor*, 596 U.S. at 859 (reiterating that "state courts" are the "final arbiters of state law" and that it "[makes] sense to consult how a state court would interpret its own State's laws"). Thus, in applying the categorical approach, a court should not rely on survey data about when, how, and in what circumstances the government prosecutes the crime. The categorical approach assesses only the elements of the crime and determines on that basis what the government must always prove.

With this understanding of *Taylor*, we turn to *Rice* and determine whether its reasoning in reaching its holding with respect to North Carolina assault by strangulation violated the analytical limitations imposed by *Taylor*, albeit subsequently.

The material facts of *Rice* are identical to those here. After Rice pleaded guilty to possessing a firearm in violation of § 922(g)(1), a probation officer concluded that his previous North Carolina conviction for felony assault inflicting physical injury by strangulation under N.C. Gen. Stat. § 14-32.4(b) was a conviction for a crime of violence and thus qualified to enhance his base offense level under § 2K2.1(a)(2). *See* 36 F.4th at 579. The sole issue on appeal was whether the district court erred in overruling Rice's objection that the enhancement did not apply because the offense was not a crime of violence as its elements lacked the necessary *mens rea*.

We concluded in *Rice* that the district court was correct to apply the enhanced base offense level because the "North Carolina crime of assault inflicting physical injury by strangulation is a crime of violence under the categorical approach." 36 F.4th at 579. In reaching that conclusion, we recognized that a crime of violence includes any felony that "has as an element the use . . . of physical force against the person of another." *Id*. at 580

9

(quoting U.S.S.G. § 4B1.2(a)(1)).  We also recognized that a crime of violence must be committed with a *mens rea* more culpable than mere recklessness or negligence.  *Id*. (citing *Borden*, 593 U.S. at 429).  And with that understanding, we held that North Carolina assault by strangulation categorically qualified as a crime of violence, involving both the requisite amount of force and a *mens rea* more culpable than recklessness.

In *Rice*, as here, it was undisputed that the degree of force requirement was satisfied because one element of the offense was the actual "inflic[tion] [of] physical injury."  N.C. Gen. Stat. § 14-32.4(b).  And when focusing on the disputed *mens rea* element of the North Carolina statute, which is precisely the issue that Robinson raises here, we relied on two forms of analysis.  *First*, we turned to North Carolina court decisions and found that "North Carolina law suggests that assault by strangulation requires *intentional* conduct."  *Rice*, 36 F.4th at 583 (emphasis added).  *Second*, we independently interpreted the text of the North Carolina statute under North Carolina's standards for interpretation and concluded that "[a] person cannot commit the act of strangling without knowing or intending it."  *Id*.

As to the first analysis, we acknowledged that § 14-32.4(b) "does not specify a mens rea."  *Rice*, 36 F.4th at 581.  Nonetheless, we found guidance in North Carolina court decisions, particularly *State v. Lanford*, 736 S.E.2d 619 (N.C. Ct. App. 2013), where the court noted that "it had previously approved a jury instruction on strangulation [that] defin[ed] it 'as a form of asphyxia characterized by closure of the blood vessels and/or air passages of the neck as a result of external pressure on the neck brought about by hanging, ligat[ure] or the manual assertion of pressure.'"  *Rice*, 36 F.4th at 582 (quoting *Lanford*, 736 S.E.2d at 624).  We reasoned that this "suggest[ed] that strangulation requires

10

intentional or purposeful conduct" because "[h]anging, ligature and the manual assertion of pressure . . . [each] require intentional conduct." *Id*. Indeed, we continued, "[a]ll three types of conduct . . . show, by their definitions, that they could not be accomplished absent an intentional, knowing or purposeful state of mind," and "while *Lanford* [did] not limit strangulation to [the three], the other definitions of strangulation it describe[d] [did] not suggest one could strangle another without intent." *Id*. at 582–83. "In sum," we concluded, "even if not expressly stated, North Carolina [case] law suggest[ed] that assault by strangulation requires intentional conduct." *Id*. at 583.

As to the second analysis conducted in *Rice*, we noted that North Carolina courts generally "requir[e] North Carolina statutes to be construed [by] giving words their 'ordinary meaning,'" and we accordingly "consider[ed] the meaning of strangulation 'to a person of ordinary intelligence.'" *Rice*, 36 F.4th at 583 (quoting *State v. Wiggins*, 158 S.E.2d 37, 42 (N.C. 1967)). In that regard, we concluded that "[n]o ordinary person would say that a person could strangle another without a purposeful, knowing or intentional state of mind" because the common understanding of "strangulation," distilled to its essence, is that "a perpetrator uses his or her hands, or a tool or other instrument, and wraps them around or applies pressure to a victim to obstruct their breathing." *Id*. Moreover, we found support for this interpretation by referring to *corpus linguistics*, "[a]n emerging tool of statutory construction" that involves searching a database of written work to see how a word or phrase is used. *Id*. at 583 n.6. A search of the Corpus of Contemporary American English for the use of "strangulation" from 1990 to 2004 yielded close to 300 results, and "all uses of strangulation, in the context of a person strangling someone else [and] where

11

the strangler's state of mind could be determined, involved *intentional or purposeful* action." *Id*. (emphasis added).

Both of these analyses remain appropriate after *Taylor* for conducting the categorical inquiry of whether the elements of the offense require the government to prove the use, attempted use, or threatened use of force with a *mens rea* more culpable than mere recklessness. *See Taylor*, 596 U.S. at 860. Indeed, no one has argued that these two forms of analysis are inconsistent in any way with the limitations imposed by *Taylor*.

After conducting these two analyses in *Rice* to conclude that North Carolina assault by strangulation requires a *mens rea* more culpable than recklessness, we turned to three *nondispositive* arguments. But we did so only to provide support for our conclusion. First, we noted that "Rice [could not] point to a single case where North Carolina obtained, or much less sought, a conviction for assault by strangulation where the defendant did not knowingly, purposefully or intentionally strangle their victim." *Rice*, 36 F.4th at 584. And we pointed to 19 cases where the conduct "suggested a purposeful, knowing or intentional state of mind." *Id*. Even so, we emphasized that "a defendant's inability to cite a prosecuted case 'is by no means dispositive.'" *Id*. at 585 (quoting *United States v. Proctor*, 28 F.4th 538, 552 (4th Cir. 2022)). Similarly, we accepted that the "categorical approach does not require reported cases involving prosecution of assault by strangulation based on negligence or recklessness." *Id*. In that regard, we agreed with the proposition advanced by Rice that the proper inquiry is "what North Carolina *could* punish under the statute, *not what it does punish*." *Id*. (emphasis added).

12

Moreover, as additional evidence to support our interpretation of the strangulation element in the North Carolina statute, we highlighted that North Carolina's pattern jury instructions provide that the government must prove, "[f]irst, that the defendant assaulted the victim by intentionally (and without justification or excuse) strangling the victim. And second, that the defendant inflicted physical injury upon the victim." *Rice*, 36 F.4th at 584 (quoting N.C.P.I. Crim. 208.61). Again though, we recognized that the model instructions were "not North Carolina law" and thus were "not dispositive on our issue," observing that they constituted only "additional evidence." *Id*.

Finally, we confirmed our conclusion as to the required *mens rea* necessary to commit the assault by strangulation offense by construing another element of the statute, namely, that which requires that the defendant "inflict[] physical injury" on the victim. We noted that, as interpreted by "the North Carolina Court of Appeals[,] . . . '[t]he word "inflict" means to lay on or impose . . . . Thus, to violate the statute, an intentional, rather than accidental, act causing physical injury is required.'" *Rice*, 36 F.4th at 584 (quoting *State v. Young*, 312 S.E.2d 665, 668 (N.C. Ct. App. 1984)). As we summarized, "Strangulation by itself requires an intentional, knowing or purposeful state of mind, and to add that strangulation was *inflicted* by someone leaves no doubt." *Id*. at 585.

Robinson points to the portion of *Rice* where we referred for support to survey evidence of prosecutions, a form of analysis that, as he correctly notes, is now limited by *Taylor*. But that analysis in *Rice* was only added to the opinion to provide additional confirmation for our holding, which was based on an interpretation of the offense's elements and what the government had to prove in terms of *mens rea* to establish those

13

elements.  The *Rice* holding thus remains valid.  *See, e.g.*, *United States v. Dodge*, 963 F.3d 379, 383 (4th Cir. 2020) (explaining that "[a] decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it [has been] overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court" (quoting *United States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005))); *United States v. Winston*, 850 F.3d 677, 683 (4th Cir. 2017) (concluding that a prior panel decision was "no longer binding" because its holding had been "clearly undermined by more recent Supreme Court decisions" (cleaned up)); *see also United States v. Biongo*, No. 19-4108, 2023 WL 4045244, at *2 (4th Cir. June 16, 2023) (per curiam) (continuing to rely on *Rice* as precedent following *Taylor*).

At bottom, Robinson's argument that *Rice* is no longer binding after *Taylor* rests on the premise that *Rice* held that the strangulation offense qualifies "*because* the defendant had not presented 'a single case' in which [a] defendant was convicted in North Carolina for assault by strangulation 'with a reckless or culpably negligent state of mind.'" (Emphasis added) (quoting *Rice*, 36 F.4th at 584).  But that was not the analysis on which *Rice*'s holding rested.  That analysis was conducted only to confirm the holding.  The holding itself was grounded on an interpretation of the text of N.C. Gen. Stat. § 14-32.4(b) and on North Carolina case law construing it.  *Taylor* did not undermine these forms of analysis.

Because *Rice* remains a binding precedent of our court following *Taylor*, it follows that the district court properly enhanced Robinson's base offense level under § 2K2.1(a)(2) on the ground that his prior North Carolina conviction for assault by strangulation qualifies

14

categorically as a conviction for a crime of violence.  The judgment of the district court is

accordingly

AFFIRMED.